UNITED STATES of America

v.

Gabriel REGUER etc., Defendant.

No. CR–88–00155–02(CPS).

United States District Court,
E.D. New York.

May 4, 1995.

Stuart J. Grossman, Grossman, Lavine & Rinaldo, Forest Hills, NY, for defendant.

Kelly A. Moore, United States Attorney's Office, Criminal Division, Brooklyn, NY, for plaintiff.

MEMORANDUM AND ORDER

SIFTON, Chief Judge.

This case involves a prosecution for wire fraud and conspiracy relating to the sale of counterfeit Passover Haggadahs. As part of a plea agreement, defendant pled to a new

information charging violations of 31 U.S.C. § 5313 and § 5322, and the prior indictment was dismissed. On motion by the defendant, this Court vacated the defendant's plea in January 1995. The government now moves to reinstate the indictment dismissed pursuant to the plea agreement.[1] For the reasons set forth below, the government's motion is granted.

## BACKGROUND

The original indictment in this case was filed in March of 1988, and the government filed a superseding indictment on May 23, 1988. This indictment charged Reguer and co-defendant Raphael Podde with three counts of wire fraud and one count of conspiracy to commit wire fraud, all in relation to the sale of counterfeit Guadalaxara Haggadahs, which are rare versions of a Jewish text read during Passover celebrations.

Trial began on June 2, 1988. After the jury was selected and the government made its opening statement, the defendant Podde decided to enter a plea of guilty to the entire indictment. At his plea allocution, Podde informed the Court that he had convinced Reguer to sell "certain books [by] giving him a wrong representation." Reguer was offered the opportunity to plead guilty to different, lesser charges. Reguer pleaded to a new information charging him with violating 31 U.S.C. § 5313 and § 5322 by causing The First National Savings Bank to fail to file a currency transaction report. At the time the court received his plea, Reguer maintained that he was merely acting for his brother-in-law and did know that he was dealing in counterfeits. Reguer admitted that he "structured" his transactions to avoid the reporting requirements but contended that he was never aware that it was a crime to do so. The Court accepted his plea. Reguer was sentenced to three years of probation and a fine of $150,000. Reguer was also ordered to pay restitution to the victims.

Subsequent to the Supreme Court's holding in *Ratzlaf v. United States*, —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) that a defendant is not guilty of structuring under 31 U.S.C. § 5324(a)(3) unless he knew

that his conduct was illegal, Reguer moved this Court to vacate his plea and expunge his record, arguing that *Ratzlaf* should apply to his conviction. In a Memorandum and Order dated January 5, 1995, this court granted Reguer's request, vacated his conviction and plea of guilty, and directed the parties to appear to fix a new trial date.

The government has now moved to reinstate the May 23, 1988 superseding indictment against Reguer. Through counsel, Reguer opposes this motion, arguing (1) that trial under either the indictment to which he pled or the May 23, 1988 indictment is barred by reasons of double jeopardy and (2) that trial under the May 23, 1988 indictment is time barred.

## DISCUSSION

■ As a general matter, where a defendant successfully moves to vacate his plea, courts permit a retrial on charges dismissed pursuant to the plea agreement:

> When [the defendant] was successful in revoking his part of the bargain by having his plea of guilty set aside, it is hardly surprising, and scarcely suggestive of vindictiveness, that the district attorney in turn withdrew his consent to the reduced charge. Indeed, all that happened was that the prosecution was forced to proceed on the original charge which the grand jury had returned in the first instance.

*Williams v. McMann*, 436 F.2d 103, 106 (2d Cir.1970), *cert. denied*, 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971).

■ Reguer challenges the government's right to reinstate the superseding indictment on double jeopardy grounds. It is well established that, where a plea was entered before trial had begun, no jeopardy attaches to counts of an indictment that are dismissed pursuant to a plea agreement. *See Fransaw v. Lynaugh*, 810 F.2d 518, 525 (5th Cir.) (discussing cases), *cert. denied*, 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987); *see also Williams v. McMann*, 436 F.2d 103 (2d Cir.1970) (affirming conviction on rein-

---

1. According to the government, this plea agreement was never memorialized in writing.

stated indictment without discussing double jeopardy).

When the defendant's plea to lesser charges is taken after trial begins, however, as a matter of course jeopardy attaches to the entire indictment. *Fransaw,* 810 F.2d at 525. Nevertheless, acknowledging that jeopardy has attached only begins this court's inquiry into whether the defendant has been placed in double jeopardy. *Id.* (quoting *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)).

Several courts faced with this situation have ruled that the fact that trial had commenced on the indictment does not bar retrial. *Id.* at 528; *United States v. Baggett,* 901 F.2d 1546, 1549–50 (11th Cir.), *cert. denied,* 498 U.S. 862, 111 S.Ct. 168, 112 L.Ed.2d 133 (1990); *Taylor v. Kincheloe,* 920 F.2d 599, 605 (9th Cir.1990). These courts have noted that double jeopardy does not bar retrial on the same count to which a defendant pleaded guilty, nor does it bar retrial upon mistrial or reversal on appeal. The justification the courts offer is simple: "[W]hen a defendant successfully seeks a reversal of his conviction, society's interest in punishing him, if guilty, outweighs the fact that he will be put in jeopardy again on retrial." *Fransaw,* 810 F.2d at 528. Jeopardy attaches when the jury is empaneled "because of the 'need to protect the interest of the accused in retaining a chosen jury,'" but that interest is vitiated when the defendant voluntarily enters an agreement "to insulate him from what he feared would be their unfavorable reaction to his case." *Id.* (quoting *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978)); *Baggett,* 901 F.2d at 1550.

Reguer attempts to distinguish these cases, arguing that his situation is wholly different. Reguer's plea was vacated because the Supreme Court established an element of the crime that Reguer clearly does not admit. Had the Court and the parties been aware of the element, Reguer's plea would never have been accepted by either. The cases cited above arose in different factual contexts. In *Fransaw,* the defendant was permitted to withdraw his plea upon receiving a sentence ten years in excess of what he believed the Court had promised when the plea was taken. In *Baggett,* the plea was withdrawn when the judge, after a hearing, rejected the sentencing agreement reached between the defense and the prosecution. In *Taylor,* the plea was vacated upon the defendant's argument that he had not understood its consequences.

Reguer's distinction is not persuasive. It would be a mistake to apply the rule of double jeopardy without looking at its underlying principles, *Baggett,* 901 F.2d at 1550, and those principles apply equally to Reguer as they have to the defendants discussed above.

> The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). Jeopardy was held to attach to a charge of first degree murder when the jury convicted on second degree murder and returned no verdict on the first degree murder count; when the conviction for second degree murder was overturned on appeal, retrial and conviction for first degree murder was found to be improper. However, the situation is different when the jury does not reach a verdict:

> Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it

necessary [on mistrial] to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.

*Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978).

These principles dictate that the government have the opportunity to make its case. The defendant's decision to vacate his plea in light of *Ratzlaf* simply returns him to the pretrial posture for purposes of double jeopardy. *Taylor,* 920 F.2d at 605.

The government's motion to reinstate the May 23, 1988 superseding indictment against Mr. Reguer is granted, and therefore the Court need not decide if double jeopardy would bar retrial on the § 5313 charges, since the government does not seek such a retrial. For the reasons stated on the record of March 3, 1995, the Court declines to address Reguer's statute of limitations objections at this time, and the indictment is reinstated without prejudice to a subsequent motion to dismiss on those grounds.

SO ORDERED.