**UNITED STATES of America, Plaintiff,**

v.

**Jose L. VIERA, Defendant.**

**Criminal No. 1:CR–91–164–01.
Civil Action No. 1:CV–96–392.**

United States District Court,
M.D. Pennsylvania.

July 2, 1996.

L. Rex Bickley, Harrisburg, PA, for defendant Jose L. Viera.

Jose L. Viera, White Deer, PA, pro se.

Timothy J. O'Connell, Harrisburg, PA, for defendant Vernell Strawn.

Vernell Strawn, Harrisburg, PA, pro se.

Theodore B. Smith, III, U.S. Attorney's Office, Harrisburg, PA, for U.S.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

The defendant, Jose Luis Viera, has filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Pursuant to a plea agreement, the defendant had pled guilty to a violation of 18 U.S.C. § 924(c)(1), which makes it unlawful to carry or use a firearm during and in relation to a drug trafficking offense. The motion argues that the conviction is invalid under the Supreme Court's recent decision in *Bailey v. United States,* — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

In opposition, the government contends that the conviction can be sustained under *Bailey* and that, alternatively, if the defendant succeeds in vacating his conviction, the government should be allowed to reinstate the two counts that were dismissed as part of the plea bargain.

### II. *Background.*

On October 29, 1991, the defendant and a co-defendant were named in a six-count superseding indictment. The defendant was charged: (1) in Count I with using and carrying a firearm on May 8, 1990, or aiding and abetting its use, during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); (2) in Count II with the unlawful acquisition of federal food stamps on May 8, 1990, in return for cocaine in violation of 7 U.S.C. § 2024(b); and (3) in Count III with using and carrying a firearm on May 16, 1990, during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1).

On December 8, 1992, the defendant executed a plea agreement in which he agreed to plead guilty to Count III. (Plea agreement, ¶ 1). In pertinent part, this paragraph of the agreement also advised the defendant that:

> The mandatory penalty for the offense is imprisonment for a period of five (5) years consecutive to any other sentence the defendant is serving. . . .

(Plea agreement, ¶ 1).

Paragraph one also provided that the defendant would admit when he entered his guilty plea that he was in fact guilty of Count III and that after sentencing the government would dismiss the other counts against him.

The agreement also provided that the defendant could not withdraw his guilty plea if he was dissatisfied with the court's sentence or if it declined to follow any of the parties' recommendations as to sentencing. (*Id.* at ¶ 8). The agreement was silent as to whether the defendant could appeal, or attack collaterally, his conviction or sentence. Additionally, the agreement contained a merger clause, specifying that there were no other written or oral agreements and that "[n]o other promises or inducements" had been made to the defendant. (*Id.,* ¶ 11) (brackets added).

The defendant pled guilty on the same day he signed the agreement. During his guilty-plea colloquy, as the basis for the plea and conviction, he admitted that he kept a 9-millimeter, semi-automatic gun in his bedroom where he also kept cocaine intended for sale. This admission was also made during an interview conducted on May 16, 1990, while local police were searching the defendant's apartment pursuant to a search warrant. According to the police report, the defendant also admitted that "someone had traded him the semi-automatic pistol for cocaine." (government's opposition brief, appendix B).

On March 5, 1993, the defendant was sentenced to the mandatory term of five years imprisonment to run consecutively to a state term of imprisonment he was then serving for drug offenses. Pursuant to the agreement, the other two counts were dismissed on motion of the government. The defendant took no direct appeal, and his 2255 motion, filed March 6, 1996, representing his first attempt at collateral relief, was prompted by *Bailey.*

### III. *Discussion.*

■ There is no doubt that the defendant's section 924(c)(1) conviction was valid under Third Circuit law as it existed at the time of the plea bargain and before *Bailey.* In *United States v. Price,* 76 F.3d 526, 528 (3d Cir.1996), the Third Circuit noted that

pre-*Bailey* law only required that the weapon be available for use in a drug transaction. In contrast, *Bailey* requires active employment of the weapon. Thus, the factual basis of Viera's plea is no longer adequate to sustain the conviction because it only establishes that the gun was present in a room where drugs were kept.

The government attempts to defeat the motion by pointing to the defendant's purported admission that someone had traded him the gun for cocaine. Relying on the Supreme Court's statement in *Bailey* that bartering drugs for a weapon would satisfy the active-employment requirement, ⸺ U.S. at ⸺, 116 S.Ct. at 508, 133 L.Ed.2d at 483–84, the government argues that this admission sustains the conviction and that, if necessary, a hearing can be held where the factual basis of the admission can be established.

■ The difficulty with this argument is that count III charges the defendant with using and carrying a firearm on May 16, 1990, and the government does not offer to prove that the trade for the gun happened on that date. "Although an indictment need not, as a general rule, establish a date with absolute certainty, when the date is a critical element of the offense a variance between the *allegata* and *probata* is fatal." *United States v. Frankenberry,* 696 F.2d 239, 245 (3d Cir.1982). The date is a critical element here because we do not know whether the indictment was obtained by proving that the weapon was present with the drugs or by proving the entirely separate bartering transaction. We strongly suspect the former since the date is the same as the date of the search, and the government would have believed at that time that proof of the proximity of a weapon to drugs would be adequate for the indictment. We therefore reject the government's attempt to rely on the alleged barter of the weapon.

Thus, we must grant the defendant's motion to vacate the section 924(c)(1) conviction. In light of *Bailey,* the defendant pled guilty to something that was not a crime, and he is entitled to the retroactive benefit of that case. *See United States v. Gaither,* 926 F.Supp. 50 (M.D.Pa.1996) (Rambo, C.J.) (cit-

ing *Warner v. United States,* 926 F.Supp. 1387 (E.D.Ark.1996)).

The government has also argued that, if we grant the defendant's motion to vacate the conviction, the motion constitutes a breach of the plea agreement, entitling it to reinstate counts I and II, the counts it agreed to dismiss in return for the defendant's plea of guilty to count III. The government insists that if the defendant is no longer willing to go along with the bargain, it should no longer be bound by it either, and the parties should be returned to the position they were in before the agreement was made.

■ The government's view that the defendant's conduct is a breach of the agreement entitling it to rescission is reasonable. Generally, plea agreements are treated like contracts and are governed by contract principles. *See United States v. Hayes,* 946 F.2d 230, 233 n. 3 (3d Cir.1991). However, some courts have rejected the government's position, ruling instead that a defendant's successful collateral attack on a conviction based on a subsequent change in the law is not a breach of the plea agreement. *See Gaither, supra; United States v. Crespo,* No. 3:CR–93–277 (M.D.Pa. April 17, 1996) (Conaboy, J.); *DiCesare v. United States,* 646 F.Supp. 544 (C.D.Cal.1986); *United States v. Youngworth,* 1989 WL 129262 (W.D.N.C.1989). The latter three cases based their ruling on contract analysis, reasoning that the defendants did all they agreed to do by pleading guilty and that a collateral attack on the conviction was a separate matter (although we note that the court in *Crespo* also held that the defendant, while not breaching the agreement, had nullified it). *Gaither* simply decided that there was no breach because it was "entirely proper" to attack a conviction that was based on conduct that was not a crime. *Gaither,* 926 F.Supp. at 51 (citing *Warner, supra*).

■ We cannot subscribe to this approach. Plea agreements should be interpreted in light of the parties' reasonable expectations. *See United States v. Muzika,* 986 F.2d 1050 (7th Cir.1993). Additionally, the Third Circuit has stated, although in

regard to the government's obligations under a plea bargain rather than the defendant's, that the court is "not limited to the express language of the agreement" in interpreting it. *United States v. Bogusz*, 43 F.3d 82, 94 (3d Cir.1994). In *Bogusz*, the court cited with approval language from *Moore v. Foti*, 546 F.2d 67, 68 (5th Cir.1977), where the Fifth Circuit stated that a defendant's "successful challenge to his plea bargained sentence is a tacit repudiation of the bargain." 43 F.3d at 94.[1]

In light of these standards, the defendant has breached the plea bargain because an implicit part of the agreement, indeed its very heart, was that the defendant would remain convicted and serve the sentence imposed. The government undoubtedly entered into the agreement with this understanding, and so did the defendant. It is true that the agreement did not explicitly provide that the defendant would serve the sentence imposed, but that condition can easily be inferred from the paragraphs of the agreement advising the defendant of the mandatory five-year sentence (which also mentioned that it would be consecutive to any other sentences imposed) and that the defendant could not withdraw his guilty plea if he was dissatisfied with his sentence.

Thus, the defendant's successful postconviction challenge is a breach of the agreement. *See Harrington v. United States*, 444 F.2d 1190 (5th Cir.1971) (a defendant who moves to vacate a plea-bargained conviction under section 2255 tacitly repudiates the bargain); *United States v. Perkins*, 503 F.Supp. 1107, 1112 (S.D.Tex.1980) ("The relinquishment of the right to prosecute a defendant who pleads guilty to a lesser charge is a conditional relinquishment, conditioned upon the defendant's being and remaining convicted."); *United States v. Serubo*, 502 F.Supp. 290, 292–93 (E.D.Pa.1980) (referring to a successful attack on a plea-bargained guilty plea as a "breach" of the contract). *But see People v. Aragon*, 11 Cal.App.4th 749, 14 Cal. Rptr.2d 561, 568 (1992) (a defendant who

moves to vacate a conviction based on a subsequent change in the law does not repudiate the bargain because the conviction is vitiated by the change in the law, not by the defendant's action).

In *Crespo*, the court stated that it might have found a breach if the agreement had contained a provision prohibiting the defendant from attacking his conviction either on direct appeal or on a collateral motion. We disagree that an express provision is necessary. In *Crespo*, the court cited *United States v. Zudick*, 523 F.2d 848 (3d Cir.1975), in support of its position, but *Zudick* did not hold that an express provision was necessary. It merely dealt with a conditional plea which reserved the defendant's right to raise the statute of limitations on appeal. Certainly, when a defendant bargains for an express provision reserving some right, it should be enforced, just as a provision the government includes against a direct appeal or a postconviction motion should be enforced. *See e.g., United States v. Hoyle*, 33 F.3d 415 (4th Cir.1994) (construing a clause that limited a defendant's right to pursue a direct appeal or file a 2255 motion). But the absence of such a provision does not mean that the defendant is not obligated to perform a basic and essential obligation under the plea agreement. For example, in *Bogusz* the agreement contained a stipulation concerning the applicable federal sentencing guideline and the Third Circuit held that the clause limited the government's right to argue on appeal against the stipulation even though a limitation covering an appeal was not expressly mentioned. The Third Circuit stated that a reasonable person in the defendant's position would not expect the government to be able to argue against the stipulation on appeal. 43 F.3d at 94. Similarly, the government could reasonably believe here that the defendant would not challenge his conviction after pleading guilty to one count in return for dismissal of two others.

---

1. *Gaither* relied on *Warner* to conclude that a successful 2255 attack on a conviction does not breach a plea bargain, but *Warner* is inapposite because there was no plea bargain in that case. The case was tried and a jury found the defen-

dant guilty of violating section 924(c)(1) along with other charges. The defendant's subsequent attempt to invalidate his 924(c)(1) conviction in light of *Bailey* could not have breached an agreement that did not exist.

■ Since we have decided that the defendant breached the agreement by successfully moving to vacate his conviction, the appropriate remedy is to reinstate the dismissed counts. Most courts agree that this is proper even if they do not view a defendant's attack on his conviction as a breach. *See Gaither, supra* (absent bar of the statute of limitations appropriate remedy would be reinstatement of dismissed counts); *Crespo, supra; United States v. Reguer*, 901 F.Supp. 522 (E.D.N.Y.1995) (*Reguer I*). *But see DiCesare, supra* (since defendant did not breach the plea agreement by moving to vacate her conviction, the government was bound by the agreement not to pursue the dismissed counts and could not reinstate them).

The only remaining issue is whether the five-year statute of limitations would bar reinstatement.[2] The government contends that the statute is not an issue because it was tolled for the time between the filing of the indictment and dismissal of the two counts as part of the plea bargain. Excluding this time, the government calculates that only about four and one-half years have elapsed from the date of the earliest offense and reinstatement would therefore be timely.

■ We reject this argument because, while the filing of the indictment does toll the limitations period it does so only for the purposes of allowing the government to proceed with the prosecution. Once counts are dismissed, we believe that the limitations period begins running once again from the date of the offenses. There is some statutory authority for extending the limitations period, *see* 18 U.S.C. §§ 3288, 3289 and 3290, but it does not apply here.

An argument similar to the government's was rejected in *United States v. Peloquin*, 810 F.2d 911 (9th Cir.1987). In that case, the government attempted to save a second set of indictments by arguing that the statute of limitations is suspended for the period of time that might be left in the limitations period after the filing of an initial indictment. Since the first indictments in *Peloquin* had been filed with twelve days left in the five-year limitations period, the government argued the statute had been suspended for twelve days, thus allowing it to file a second set of indictments, which were timely because they were filed within twelve days of dismissal of the first set, although outside the five-year period if the time were measured from the date of the offenses. Rejecting this argument and ruling that the indictments were time-barred, the Ninth Circuit stated that section 3282 did not provide for any suspension of the limitations period and that the language of the statute had to be followed. Since it provided a five-year limitations period from the date of the offenses, and the second set of indictments came more than five years later, they were untimely.

■ Nevertheless, we believe that the statute of limitations should not bar the reinstated counts. We recognize the contrary authority in this district. In *Gaither, supra*, the court, also confronted with a 2255 motion based on *Bailey* attacking a section 924(c)(1) conviction, held that the statute of limitations was a bar for several reasons. First, the plea had to be vacated because of the *Bailey* decision, not because of the defendant's conduct. Second, the major purpose of the limitations period—to protect the defendant from claims that might be difficult to defend because of the passage of time—would be frustrated. Third, the concurring opinion of Chief Judge Lumbard in *United States v. Liguori*, 430 F.2d 842, 850 (2d Cir.1970), and the opinion in *United States v. McCarthy*, 445 F.2d 587 (7th Cir.1971), supported a decision to bar the dismissed counts. Finally, the court was bound by the language of the statute and could not create a good-faith exception to allow the government to pursue dismissed counts when an unexpected change in the law destroys the benefit of its plea bargain.

We respectfully disagree with these reasons. First, *Bailey* did not automatically vacate the defendant's plea. The Supreme Court's ruling in that case acted only on the parties to that litigation. Gaither, and Viera as well, had to take the positive step of

---

2. 18 U.S.C. § 3282 is the general statute of limitations for noncapital criminal offenses and re- quires that the indictment be "found" within five years of the date of the offense.

moving to vacate their convictions, and they both could have complied with their plea bargains by not disturbing their convictions. Second, while it is certainly true that a major purpose of the statute of limitations is to protect against stale prosecutions, this consideration cannot determine whether the government should be entitled to reinstate dismissed counts of an indictment when the defendant has upset what the government reasonably understood to be a final disposition of a criminal matter.

Third, *Liguori*'s concurrence and *McCarthy* are not dispositive. In *Liguori*, the defendant had made a plea bargain which dismissed some counts and required him to plead guilty to another. Based on a subsequent Supreme Court decision that made the plea invalid, the Second Circuit granted the defendant's motion to vacate the judgment. Concurring, Chief Judge Lumbard stated the following about reinstatement of the dismissed charges, which the court in *Gaither* relied on:

> In such a situation there appears to be every reason to permit the government either to re-indict Liguori on the other counts, or to move in the district court to vacate the dismissal of the other counts. If the government elects to continue with the prosecution of Liguori it must do so promptly, as the acts charged occurred more than four years ago and the running of the statute of limitations will soon become a bar to any further prosecution. In the event the government does continue the prosecution, I do not think that the defense of double jeopardy will be a bar. [citations omitted].

430 F.2d at 851 (brackets added). Whatever validity these remarks had in *Liguori*, they do not control here, nor do they offer any guidance, for the simple reason that Chief Judge Lumbard was not faced with an expired statute of limitations. He was only making the obvious statement that the government should hurry if it wanted to reinstate the dismissed charges because there was still time to file them. These remarks tell us nothing about how he would have ruled in the instant situation where the limitations period has indeed expired and the

government could not be said to have acted dilatorily.

In *McCarthy*, as part of a plea bargain, counts I and III of the indictment were dismissed and the defendant pled guilty to count II. He then appealed, but the government did not cross appeal nor did it move to reinstate the dismissed counts. Eventually, the Supreme Court ruled that he should be allowed to plead anew. The government then moved, some three years after counts I and III had been dismissed pursuant to the plea bargain, to reinstate these counts. The trial court granted this request. The defendant was tried on all three counts. The jury acquitted him on count I but deadlocked on the other two counts. At a second trial, the jury found him guilty on both counts. On appeal, the convictions were reversed, and one issue that had to be resolved was whether the defendant could be retried on count III as well as count II. The Seventh Circuit decided he could not, reasoning as follows:

> In balance, we find the defendant's argument more persuasive. We agree with the implication in Chief Judge Lumbard's opinion that in a situation of this kind the Government must proceed with diligence, and that the right to prosecute will be lost unless the record is protected by filing a timely motion to reinstate the dismissed counts. Moreover, in view of the age of this litigation, and the fact that a retrial on Count III is unlikely to have a significant practical effect on its ultimate disposition ... we believe the scales should be tipped in favor of the defendant.

*Id.* at 592 (footnotes omitted). The court found a lack of practical effect because, even if the defendant were retried on both counts, he would most likely receive concurrent sentences. *Id.* at 592 n. 15.

*McCarthy* is distinguishable for two reasons. First, unlike here, because the defendant in *McCarthy* appealed his conviction, the government knew that the case was in flux and it could have protected itself by filing a timely motion to reinstate. Here, on the other hand, the case ended with the defendant's guilty plea, and the government would have had no reason to suspect that it still had to protect the societal interest in

prosecuting violators of the criminal law. Second, a retrial on Count III in *McCarthy* would have had little practical effect. In our case, on the other hand, refusal to reinstate would relieve the defendant from answering any of the charges, conferring on him a windfall. Indeed, far from being a case that strictly enforced the statute of limitations, *McCarthy* appears to be one where the court carefully weighed the competing factors in deciding whether the limitations period should be applied.

 Next, we do not agree that the court is strictly bound by the language of section 3282 and cannot create exceptions to the statutory language. While the Third Circuit has said that criminal statutes of limitations are akin to statutes of repose, it has also acknowledged that they are subject to tolling, suspension and waiver. *See United States v. Levine,* 658 F.2d 113, 119–121 (3d Cir.1981). Some of these exceptions were created by statute, but others were created by the courts. For example, even though notice to the defendant is one of the main purposes of a statute of limitations, *see United States v. Reguer,* 901 F.Supp. 525, 526–27 (E.D.N.Y.1995) (*Reguer II* ), courts have permitted indictments to be timely filed under seal for valid prosecutorial reasons and then made public after the limitations period had expired even though this technically gives the defendant notice after the statute has elapsed. *See Levine, supra,* 658 F.2d at 120 n. 9. For another example, the common practice of allowing a prosecution to proceed on a superseding indictment filed after the limitations period has expired as long as the original indictment was timely and pending, *see United States v. Friedman,* 649 F.2d 199 (3d Cir.1981), is a judicially created exception to the literal statutory bar in section 3382 to prosecution on an indictment "found" more than five years after the date of the offense. The superseding indictment cannot materially expand on the charges in the original indictment but our point here is that the superseding indictment comes after the expiration of the limitations period.

We therefore agree with the court in *Reguer II* that the statute of limitations is not a bar to reinstatement of the counts dismissed as part of the plea bargain. As the court there stated, this conclusion follows either because the statute was tolled during the time the defendant was complying with the plea agreement or because his breach of the agreement entitled the government to placed in the position it was in before the agreement was made. 525 F.Supp. at 528–29.

In closing, we note that the government was not at fault here. It prosecuted the defendant in a timely fashion and thought the case had come to a close with the plea bargain. It had no way of knowing that *Bailey* would confer a windfall on the defendant. That the defendant was not responsible for this windfall is irrelevant. *But see Gaither, supra.* If the defendant is no longer bound by the agreement, the government should not be either.

We will issue an appropriate order.

### ORDER

AND NOW, this 2nd day of July, 1996, it is ordered that:

1. The defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, filed March 6, 1996 (doc. 71) is granted and his conviction under 18 U.S.C. § 924(c)(1) on count III of the indictment is vacated.

2. The government's motion to reinstate counts I and II of the indictment, found in its opposition brief, filed May 15, 1996, (doc. 76) is granted and those counts are reinstated.