UNITED STATES of America, Appellee,

v.

**Raphael PODDE, Defendant,**

**Gabriel Reguer, Defendant–Appellant.**

**No. 1889, Docket 96–1094.**

United States Court of Appeals,
Second Circuit.

Submitted Aug. 6, 1996.

Decided Jan. 29, 1997.

Stuart J. Grossman, Grossman, Lavine & Rinaldo, Forest Hills, NY, for Defendant–Appellant.

David C. James, Kelly Anne Moore, Assistant United States Attorneys, Zachary W. Carter, United States Attorney, Eastern District of New York, Brooklyn, NY, for Appellee.

Before CALABRESI and PARKER, Circuit Judges, and POLLAK,* District Judge.

CALABRESI, Circuit Judge:

The defendant in this case was indicted on charges of conspiracy and wire fraud, but pleaded guilty to the lesser charge of illegally structuring financial transactions with the intent to evade federal reporting requirements. Later, after the Supreme Court held that a person cannot be found guilty of structuring without knowledge of the unlawful nature of his conduct, the defendant was able to withdraw his guilty plea. He was then reindicted and convicted on the original charges of conspiracy and wire fraud.

In this appeal, we consider two questions. The first is whether the government's decision to prosecute the defendant after the withdrawal of his guilty plea violated the Double Jeopardy Clause. We agree with the unanimous line of authority that holds that there is no double jeopardy bar to reprosecution in these circumstances. The second is an issue we believe to be of first impression in this or any other circuit: whether the government was permitted to reindict the defendant on the original charges after the statute of limitations had ostensibly expired. We conclude that the government should not have been permitted to do so. In reaching this result, we note that the government can

---

* The Honorable Louis H. Pollak, Senior District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

prevent the situation from arising in the future by securing waivers of the statute of limitations in its plea agreements.

## BACKGROUND

Raphael Podde, the brother-in-law of the defendant-appellant, Gabriel Reguer, is an expert restorer of ancient Hebrew books. In 1986, Podde and Reguer devised a scheme to manufacture and sell counterfeit copies of an extremely valuable fifteenth century Jewish prayer book called the Guadalaxara Haggadah, only one of which is known to survive today.[1] Reguer, using an alias and a fake address, contacted two investors by telephone and described to them an ancient Haggadah that he had supposedly inherited from his deceased father. Believing the document to be a second original print of the famed Guadalaxara Haggadah, the investors paid $60,000 in cash for it. Following this success, Reguer attempted to sell other counterfeit copies of the book on two additional occasions, but in each case the prospective buyers were able to spot the forgery and the scheme failed.

Based on the FBI's investigation of this scam, Reguer and Podde were indicted in March 1988 on three counts of wire fraud under 18 U.S.C. § 1343 and one count of conspiracy to commit wire fraud under 18 U.S.C. § 371. A superseding indictment repeating the same counts was filed on May 23, 1988, and a trial soon followed. On June 2, 1988, just after the jury had been empaneled and the government had made its opening statement, both Reguer and Podde pleaded guilty: Podde to the whole indictment, Reguer to a lesser charge pursuant to a plea bargain. In return for the government's agreement to drop the other charges, Reguer pleaded guilty to causing the First National Savings Bank to fail to file a currency transaction report in violation of 31 U.S.C. §§ 5313, 5322(a) and 18 U.S.C. § 2. A mistrial on the original charges was declared, and Reguer was sentenced on his guilty plea to three years probation and a fine of $150,000.

In January 1994, subsequent to the Supreme Court's holding in *Ratzlaf v. United States,* 510 U.S. 135, 149, 114 S.Ct. 655, ——, 126 L.Ed.2d 615 (1994), that a defendant cannot be found guilty of structuring financial transactions under 31 U.S.C. § 5313 unless he knew that his conduct was illegal, Reguer moved to vacate his plea and expunge his record. Since Reguer had maintained at the time of his plea that he was unaware that his attempts to avoid the federal reporting requirements were unlawful, Chief Judge Sifton vacated Reguer's conviction on January 9, 1995. *See United States v. Reguer,* 901 F.Supp. 515 (E.D.N.Y.1995). On January 30, 1995, the government moved to reinstate the original indictment charging Reguer with conspiracy and wire fraud. The district court granted that motion orally in March 1995, and in a written opinion dated May 4, 1995. *See United States v. Reguer,* 901 F.Supp. 522 (E.D.N.Y.1995). In April 1995, Reguer moved to dismiss the indictment as time-barred. The court denied that motion the following month. *See United States v. Reguer,* 901 F.Supp. 525 (E.D.N.Y. 1995).

Reguer's second trial began in June 1995. The jury found him guilty, and a judgment of conviction was entered on February 2, 1996. Reguer was sentenced to five years probation, fined $12,734, assessed an additional $200, and ordered to make restitution in the amount of $61,300. He now challenges that conviction on appeal.

## DISCUSSION

### A. Double Jeopardy

The Double Jeopardy Clause guarantees that criminal defendants shall not "be twice put in jeopardy of life or limb" for the "same offence." U.S. CONST. amend. V. Reguer contends that this provision should have barred his second trial. Like the district court, *see Reguer,* 901 F.Supp. at 523–25, we disagree.

---

1. A Haggadah is a Jewish prayer book read during the celebration of Passover. Following the invention of the printing press, Haggadot were printed (as opposed to hand-written) for the first time in Guadalaxara, Spain, in the late fifteenth century. The only known authentic copy of the Guadalaxara Haggadah is located in the Jewish National and University Library in Jerusalem.

A defendant may only raise a Double Jeopardy claim if he has been put in jeopardy (*i.e.* jeopardy has "attached") sometime before the alleged "second" prosecution. *See, e.g., Crist v. Bretz,* 437 U.S. 28, 32–33, 98 S.Ct. 2156, 2159–60, 57 L.Ed.2d 24 (1978). It is undisputed that jeopardy attaches to the entire indictment as soon as a jury is empaneled. *See id.* at 35, 98 S.Ct. at 2160–61 (citing *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), as "explicit authority for the proposition that jeopardy attaches when the jury is empaneled and sworn"). Since Reguer entered into his plea agreement with the government after the jury had been empaneled in his first trial, jeopardy had attached to the charges in the indictment. However, "in cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973).[2]

A double jeopardy inquiry must be conducted with the purposes served by the Clause in mind. *See, e.g., United States v. Baggett,* 901 F.2d 1546, 1550 (11th Cir.1990) (per curiam). In a frequently quoted passage, the Supreme Court in 1957 articulated those purposes:

> The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957).

Consistent with those purposes, the law is clear that double jeopardy does not apply when a mistrial is declared at the request of the defendant. "A defendant's motion for a mistrial constitutes 'a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact,'" and he may not defend on double jeopardy grounds if the state seeks to determine his guilt before a second trier of fact. *Oregon v. Kennedy,* 456 U.S. 667, 676, 102 S.Ct. 2083, 2089–90, 72 L.Ed.2d 416 (1982) (quoting *United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978)). In such circumstances, the need to restrain the power of the state is not implicated.

In the case before us, Reguer's lawyer specifically affirmed upon agreeing to the plea bargain at the first trial that it was "the application of all parties, including the defendant, to have the jury excused and a mistrial declared." Since the mistrial was declared at the request of the defendant (among others), the letter of *Oregon v. Kennedy* may well control here. In any event, the spirit of that case, and the broader principle for which it stands—that *double jeopardy does not apply* when the defendant, and not the state, is responsible for terminating the first prosecution and causing the second prosecution—would resolve the issue.

Because " 'the Double Jeopardy Clause ... does not relieve a defendant from the consequences of his voluntary choice,'" *Ricketts v. Adamson,* 483 U.S. 1, 11, 107 S.Ct. 2680, 2686, 97 L.Ed.2d 1 (1987) (quoting

2. Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances *do not invariably create unfair*ness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.

*Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978).

*Scott,* 437 U.S. at 99, 98 S.Ct. at 2198), it is well-settled that double jeopardy does not apply to the original counts in an indictment when a defendant has withdrawn or successfully challenged his plea of guilty to lesser charges. *See, e.g., United States v. Barker,* 681 F.2d 589, 592 (9th Cir.1982); *Hawk v. Berkemer,* 610 F.2d 445, 447–48 (6th Cir. 1979); *United States v. Williams,* 534 F.2d 119, 120–22 (8th Cir.1976); *United States v. Anderson,* 514 F.2d 583, 587 (7th Cir.1975). The numerous cases that consider this issue "hold with apparent unanimity that when [the] defendant repudiates the plea bargain, either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy ... obstacle to restoring the relationship between defendant and state as it existed prior to the defunct bargain." *Fransaw v. Lynaugh,* 810 F.2d 518, 524–25 (5th Cir.1987). We agree. Anything else would give rise to intolerable manipulation and gamesmanship on the part of defendants. *Cf. United States ex rel. Williams v. McMann,* 436 F.2d 103, 106–07 (2d Cir.1970) ("For us to hold that one in [defendant's] position may not be tried and sentenced upon the charge originally brought would encourage gamesmanship of a most offensive nature. Defendants would be rewarded for prevailing upon the prosecutor to accept a reduced charge and to recommend a lighter punishment in return for a guilty plea, when the defendant intended at the time he entered that plea to attack it at some future date.").

In this respect, it makes no difference whether the defendant enters into a plea bargain before or after the jury has been empaneled and jeopardy has attached. *See Fransaw,* 810 F.2d at 526 ("Although this distinction diminishes the direct application of these authorities here, we discern in the cases a judicial regard for fairness, namely, a defendant should not be able to reject a plea bargain and then erect the shield of double jeopardy to the revived counts. This concern for fairness (and for the integrity of the plea bargaining process) is equally compelling when the plea is entered and abandoned after trial begins."). As a result, three circuits have explicitly held that double jeopardy does not bar a retrial on the original indictment when a defendant withdraws his plea of guilty to lesser charges, even if the plea was entered into after the jury had been empaneled and jeopardy had attached. *See Taylor v. Kincheloe,* 920 F.2d 599, 604–06 (9th Cir.1990); *Baggett,* 901 F.2d at 1550; *Fransaw,* 810 F.2d at 525–29. As one of them has explained:

> [J]eopardy attaches when a jury is empaneled because of "the need to protect the interest of [an] accused in retaining a chosen jury." [*Crist v. Bretz,* 437 U.S. 28, 35, 98 S.Ct. 2156, 2160, 57 L.Ed.2d 24 (1978).] But [the defendant] sought out the state after appearing before his chosen jurors and entered an arrangement designed to insulate him from what he feared would be their unfavorable reaction to his case.... [T]he double jeopardy clause guards against the harassment, embarrassment, expense, and increasing odds of conviction that accompany repeated prosecutions. Here, however, this burden was voluntarily shouldered by [the defendant].

*Fransaw,* 810 F.2d at 528. We join those circuits today.

Reguer attempts to distinguish this unanimous line of precedent by arguing that he did not simply choose to withdraw his plea; instead, the Supreme Court changed the law under which he had been convicted. This distinction is unpersuasive. It is true that the concern for gamesmanship is implicated to a much smaller degree in cases in which the defendant withdraws his guilty plea because of an unforeseen change in the governing law. *See United States v. Gaither,* 926 F.Supp. 50, 54 (M.D.Pa.1996). But there is still no need to restrain the overwhelming power of the state. *See Barker,* 681 F.2d at 591 ("Trial on the [greater] charge will not constitute reprosecution; nor will [the defendant] be subjected to the physical, psychological and financial burdens that arise when the Government attempts repeated prosecutions ... [when] the failure of the initial proceeding ... was not a product of Government action, but of [the defendant's] own decisions to plead guilty and to have that plea set aside.") (citations omitted). And the fact remains that it was Reguer who chose to plead guilty and then to withdraw his plea. The

intervening *Ratzlaf* decision did not *compel* him to do so—it merely gave him that opportunity. See *United States v. Viera*, 931 F.Supp. 1224, 1229–30 (M.D.Pa.1996). Whatever the defendant's motivation for pleading guilty and for withdrawing his plea, his voluntary choice to do so releases the government from its obligation not to prosecute[3] and there is no double jeopardy bar to retrying him on the charges in the original indictment. Once again, "'the Double Jeopardy Clause ... does not relieve a defendant from the consequences of his voluntary choice.'" *Ricketts*, 483 U.S. at 11, 107 S.Ct. at 2686 (quoting *Scott*, 437 U.S. at 99, 98 S.Ct. at 2198).

*B.   Statute of Limitations*

The residual period of limitation for federal crimes is five years. 18 U.S.C. § 3282. Reguer's wire fraud scheme took place in 1986. He was originally indicted in March 1988, well within the limitations period. A superseding indictment was filed in May 1988, also well within the limitations period. However, Reguer's reindictment after the withdrawal of his guilty plea took place in January 1995, some four years after the statute of limitations had expired. Prior to his second trial, Reguer moved to have the indictment dismissed as untimely. This the district court refused to do, declaring that it would "consider the statute of limitations tolled with respect to the May 1988 indictment so that the government can be returned to the position it was in before the plea agreement was made." *Reguer*, 901 F.Supp. at 527. We cannot affirm that decision.[4]

It is not disputed that the statute of limitations is tolled upon the filing of an indict-ment. See *United States v. Grady*, 544 F.2d 598, 601 (2d Cir.1976); *United States v. Bortnovsky*, 683 F.Supp. 449, 450–52 (S.D.N.Y. 1988) (discussing the meaning of *Grady*). Reguer contends, however, that the tolling of the statute of limitations was lifted when the plea bargain was struck and the indictment was dismissed, and thus that, since the reinstated indictment was filed more than five years after the crimes took place, the prosecution was time-barred.

Reguer is correct that the statute of limitations begins to run again once an indictment is dismissed. See *Grady*, 544 F.2d at 601. And dicta from this court provide explicit support for Reguer's contention that a reinstated indictment following a vitiated plea bargain will not be timely whenever the order of reinstatement is filed after the expiration of the limitations period. In *United States v. Liguori*, 430 F.2d 842 (2d Cir.1970), we reversed a conviction pursuant to a plea bargain because the Supreme Court had subsequently changed the law under which the defendant had been convicted. Writing in concurrence, then-Chief Judge Lumbard noted:

> In such a situation there appears to be every reason to permit the government either to re-indict Liguori on the other counts, or to move in the district court to vacate the dismissal of the other counts. If the government elects to continue with the prosecution of Liguori it must do so promptly, as the acts charged occurred more than four years ago and the running of the statute of limitations will soon become a bar to any further prosecution.

3. See *Innes v. Dalsheim*, 864 F.2d 974, 978 (2d Cir.1988) (discussing the "situation in which the defendant has [voided] the plea arrangement. There the relief afforded the government includes release from its promises under the plea arrangement, and the right to proceed against the defendant without reference to its earlier promises."); *Moore v. Foti*, 546 F.2d 67, 68 (5th Cir.1977) (per curiam) ("[A]ppellant's successful challenge to his plea-bargained sentence is a tacit repudiation of the bargain, allowing the government to prosecute him on the greater charge."); *United States v. Gerard*, 491 F.2d 1300, 1306 (9th Cir.1974) ("If ... a defendant pleaded guilty to one count and the prosecutor dismissed the others, it should be reasonably apparent that the dismissal was in

consideration of the plea; if the defendant succeeded in withdrawing the plea, he should not be able to object to the prosecutor's reviving the other counts.").

4. While this is an issue of first impression in this or any other circuit, several district courts have recently addressed it. One judge has agreed with Chief Judge Sifton's *Reguer* decision. See *Viera*, 931 F.Supp. at 1229–31. But another judge has expressly rejected that holding. See *Gaither*, 926 F.Supp. at 52–54; *cf. Rodriguez v. United States*, 933 F.Supp. 279, 282 (S.D.N.Y. 1996) (distinguishing and criticizing *Reguer*).

*Id.* at 851 (Lumbard, *C.J.*, concurring). In *United States ex rel. Ennis v. Fitzpatrick*, 438 F.2d 1201 (2d Cir.1971), another case in which a judgment of conviction entered after a plea bargain was reversed, we cited Chief Judge Lumbard's concerns approvingly, noting that reindictment "may be questionable here since more than five years have elapsed since the marihuana transactions unless the statute of limitations has in some manner been tolled." *Id.* at 1202.

Refusing to adopt this analysis, the district court concluded that the statute of limitations had, in fact, been tolled:

> [T]he government has in no way been dilatory or delinquent in Mr. Reguer's case. Once Reguer's plea was vacated, the government moved promptly to reinstate the May 1988 indictment against him. Its conduct has been timely and proper; the government has not sat on its rights but pursued them diligently. In such a case, the statute of limitations is to be considered tolled, and thus the reindictment in this case is proper.

*Reguer*, 901 F.Supp. at 528–29.

■ This conclusion would be correct if it were the case that the statute of limitations is tolled whenever the government acts diligently and without fault. But that is not the law.[5] The Supreme Court has explained the rationale behind criminal statutes of limitations:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts

may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before the principle that criminal limitations statutes are to be liberally interpreted in favor of repose.

*Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 859–60, 25 L.Ed.2d 156 (1970) (citations and internal quotation marks omitted). As this passage makes clear, while it is true that one purpose of the statute of limitations "is to prevent the Government from instituting prosecutions after excessively long delays," *United States v. Muse*, 633 F.2d 1041, 1043 (2d Cir.1980) (en banc), the law's primary purpose is "the protection of those who may during the limitation have lost their means of defence. These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971) (citation, brackets, and internal quotation marks omitted). In other words, the statute of limitations exists primarily to protect the rights of the defendant, not just to prevent the government from acting in bad faith.

Thus, in a case like this one, it could well be that Reguer had a plausible defense to the original charges against him, and that witnesses essential to that defense became unavailable with the passage of time. The fact that he chose to plead guilty to the lesser charges because he was, we can assume,

---

5. The district court made reference to *United States v. McCarthy*, 445 F.2d 587, 591–92 (7th Cir.1971) (Stevens, J.), a case in which the Seventh Circuit held that, when an indictment had been dismissed pursuant to a plea bargain and the conviction under the plea bargain was subsequently reversed, the government was not permitted to wait three years until after the statute of limitations had expired before reinstating the original indictment. Chief Judge Sifton distinguished *McCarthy* on the ground that the government did not delay in reindicting Reguer, but instead acted promptly as soon as Reguer's plea was vacated. *See Reguer*, 901 F.Supp. at 528. It is true that in *McCarthy* the government could have reinstated the indictment within the limitations period, and failed to do so, while in the case before us the government had no such opportunity. That undoubtedly means that *McCarthy* does not provide a precedent *for* Reguer. But it in no way follows that *McCarthy* provides a precedent the other way. Whatever *McCarthy* stands for, it does *not* hold that, as long as the government moves quickly to reinstate an indictment, there will be no limitations bar to reprosecution.

guilty of those charges under the law at the time, and that under a later Supreme Court decision his guilt to the lesser charges vanished, in no way affects the fact that his defense to the original charges may have been jeopardized by the passage of time. Nor is this altered at all simply because the government acted as quickly as it could. Yet the statute of limitations was enacted for precisely this reason: to guard against the danger of erosion of defenses over time.

■ We are thus inclined to agree with Chief Judge Rambo of the Middle District of Pennsylvania that the district court's decision in

> *Reguer* misconstrues the Supreme Court's statement of the policy underlying the statute of limitations in the criminal context. The overwhelming concern of that policy, according to *Toussie* and *Marion*, is to protect the accused "from having to defend themselves against charges when the basic facts may have become obscured by the passage of time." While the statute of limitations "may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity," diligence and good faith by the government does not toll or otherwise negate the operation of the statute of limitations. Accordingly, notwithstanding the United States' insistence to the contrary, the principles underlying the statute of limitations counsel against allowing reinstatement in this case.

*Gaither,* 926 F.Supp. at 53.

■■ Accordingly, in light of Judge Lumbard's *Liguori* concurrence, of the purpose of the statute of limitations, and of the mandate that "criminal limitations statutes are to be liberally interpreted in favor of repose," *Toussie,* 397 U.S. at 115, 90 S.Ct. at 860, we refuse to read a good faith exception into the

statute of limitations that would allow the government to indict a defendant years after the limitations period has expired. *See Gaither,* 926 F.Supp. at 54 ("Congress chose to enact a five-year statute of limitations, without a good faith exception, and this court is bound to apply it."); *cf. United States v. Peloquin,* 810 F.2d 911, 913 (9th Cir.1987) (Kennedy, J.) (noting that, whatever the "policy reasons," courts should leave to Congress the task of defining the exceptions to the plain language of 18 U.S.C. § 3282).

■ As an alternative ground for its holding, the district court relied on the contractual nature of the plea bargain: the government only agreed to dismiss the indictment because of its deal with Reguer; now that Reguer has breached that deal by withdrawing his guilty plea, the contract is void, the parties should be placed in their original positions, and the court should treat the indictment as though it had never been dismissed. *See Reguer,* 901 F.Supp. at 529. This argument has a certain appeal, but we must nonetheless reject it. Although we have frequently noted that "[p]lea agreements are construed according to contract law principles," *United States v. Yemitan,* 70 F.3d 746, 747 (2d Cir.1995), we remain suspicious of the application of contract law doctrine in favor of the prosecution. See *United States v. Ready,* 82 F.3d 551, 558 (2d Cir. 1996); *Innes v. Dalsheim,* 864 F.2d 974, 978 (2d Cir.1988). Thus, we "construe plea agreements strictly against the government." *Ready,* 82 F.3d at 559.

Applying that rule, we must reverse the district court. Reguer may well have breached the plea agreement. He certainly voided it. Either way, the government was not bound by its promise not to prosecute him for wire fraud and conspiracy.[6] But it was not the government's promise that stood

---

**6.** *Compare Gaither,* 926 F.Supp. at 51–52 (holding that where the Supreme Court changes the law, the defendant's "decision to seek release is entirely proper, and is not a breach of the plea agreement"), *with Reguer,* 901 F.Supp. at 529 ("By successfully moving to vacate his plea, Reguer has breached the agreement...."). Whether Reguer breached his contract or acted properly in negating it is largely irrelevant to this issue. Despite the change in law, Reguer remained free

to comply with the plea bargain. By taking advantage of the opportunity to vacate his conviction under *Ratzlaf,* Reguer chose to void his agreement with the government. *See Viera,* 931 F.Supp. at 1229–30. That choice relieved the government from *its* contractual obligations, *see supra* note 3, and explains why double jeopardy does not apply. It did not, however, affect the statute of limitations.

in the way of reindictment. It was the statute of limitations. That law provides, in no uncertain terms, that "no person shall be prosecuted ... for any offense ... unless the indictment is found ... within five years next after such offense shall have been committed." 18 U.S.C. § 3282. Even if the parties' promises to each other were negated, the fact remains that the indictment was reinstated more than eight years after the events in question.

Reguer's successful attempt to void the contract could eliminate this extrinsic statutory bar to untimely prosecution only if the plea agreement contemplated that result, if, in other words, Reguer waived the statute of limitations. But there is no indication in the record that Reguer agreed that a successful withdrawal of his guilty plea would constitute such a waiver. And we will not imply a waiver in a plea bargain that is to be strictly construed against the government.[7] In the absence of a waiver, analogies to broad principles of contract law are not enough to overcome the plain letter of the statute. *See United States v. McCarthy*, 445 F.2d 587, 592 (7th Cir.1971) ("[F]rom defendant's point of view, the contractual element of the plea is subordinate to the legal effect of the unequivocal dismissals.").

## CONCLUSION

While we agree with the district court that the Double Jeopardy Clause did not constitute a bar to the defendant's prosecution, we find that the government was not permitted to reindict the defendant after the expiration of the statute of limitations. Accordingly, we vacate the defendant's conviction. We note that the government can avoid similar results in future plea bargains by securing, from those defendants who are willing to give it, a waiver of the statute of limitations covering those situations in which the defendant withdraws or challenges his or her guilty plea after the limitations period on the original charges has expired.

7. We have held that, by executing a plea agreement, a defendant waives his statute of limitations defense to the charges to which he is pleading guilty, even if the agreement makes no express mention of the statute of limitations. *See United States v. Doyle*, 348 F.2d 715, 718–19 (2d Cir.1965); *United States v. Hansel*, 70 F.3d 6, 7 (2d Cir.1995). But that is not the case here. *Doyle* was based on the principle that "a plea of guilty to an indictment is an admission of guilt and a waiver of all non-jurisdictional defenses." *Doyle*, 348 F.2d at 718 (citation, brackets, and internal quotation marks omitted); *see also Acevedo–Ramos v. United States*, 961 F.2d 305, 307–09 (1st Cir.1992). Reguer did not admit in his plea agreement to be being guilty of the charges that he now claims were barred by the statute of limitations. Nothing in *Doyle* supports the proposition that a defendant who pleads guilty waives any defenses that he has or may acquire in the future to charges as to which he has not admitted his guilt.

This distinction is not formal but substantive. Where a defendant has pleaded guilty to charges, he has avowed that he has no valid defenses that could be jeopardized by the passage of time. Where, as here, the defendant has not pleaded guilty to the charges later sought to be brought, he has made no such concession. Accordingly, the reason for the statute of limitations remains in full force. Conversely, an express waiver of the statute of limitations can be read either as a concession that no such time-dependent defenses are available, or as a conscious choice to abandon those defenses.