Beatrice DiCESARE, Movant in CV 86–5009, Defendant in CR 83–768,

v.

UNITED STATES of America, Respondent in CV 86–5009, Plaintiff in CR 83–768.

Nos. CV 86–5009–AAH, CR 83–768(A)–AAH.

United States District Court, C.D. California.

Oct. 28, 1986.

Janet Sherman, Victor Sherman, Santa Monica, Cal., for DiCesare.

Robert C. Bonner, U.S. Atty., Robert L. Brosio, Asst. U.S. Atty., Chief, Criminal Div., William C. Price, Asst. U.S. Atty., Los Angeles, Cal., for U.S.

## DECISION AND ORDER GRANTING MOTION TO VACATE SENTENCE (28 U.S.C. § 2255)

HAUK, Senior District Judge.

### FACTUAL BACKGROUND

This matter is before the Court upon the motion of Beatrice DiCesare ("DiCesare"), who, pursuant to 28 U.S.C. § 2255, contends that her sentence must be vacated because her conviction and subsequent punishment were for acts that the law does not make criminal.

On October 25, 1983, a six count First Superseding Indictment was filed against DiCesare and five other codefendants. DiCesare was charged in Count One with conspiracy to possess with intent to distribute and to distribute a narcotic drug controlled substance, in violation of 21 U.S.C. sections 846 and 841(a)(1), and in Count Six with conspiracy to fail to file currency transaction reports ("CTR's") for currency transactions involving in excess of $10,000,

in violation of 18 U.S.C. section 371 and 31 U.S.C. sections 5313[1] and 5322.[2]

Count Six of the Indictment charges in substance that DiCesare engaged in a scheme to launder funds derived from narcotics transactions so as to purchase negotiable instruments, i.e., cashier's checks, for less than $10,000 and thus avoid triggering the bank's reporting requirements under the Currency Transaction Reporting Act ("Reporting Act"), 31 U.S.C. §§ 5311–5322, and the implementing Treasury Regulation, 31 C.F.R. § 103.22.[3] The Indictment alleges as overt acts of the conspiracy that on January 3, 1983, DiCesare met with an officer at First Los Angeles Bank, who was cooperating with the Government, and requested that the officer not file CTR's for transactions involving more than $10,000. On January 7, 1983, DiCesare's husband and codefendant, Dario DiCesare, delivered to the cooperating bank officer currency totalling $47,500 and purchased five cashier's checks each for $9,500, and insisted that no CTR be filed. Also on January 7, 1983, DiCesare's husband discussed with the cooperating bank officer depositing $500,000 in currency under a fictitious name without filing a CTR. Finally, on April 4, 1983, DiCesare and her husband delivered to the cooperating bank officer currency in the amount of $19,000, and purchased two cashier's checks each for $9,500, and insisted that no CTR be filed.

After first pleading not guilty to both counts charged against her, DiCesare later entered into a plea agreement with the Government whereby she agreed to plea guilty to Count Six in exchange for the Government's moving that Count One be dismissed. Pursuant to the terms of the plea agreement, on December 13, 1983, DiCesare pleaded guilty to Count Six and the Court dismissed the other count.

On January 19, 1984, DiCesare was sentenced to confinement for three months as an outpatient in a Community Treatment Center and placed on probation for a period of three years to commence upon her release from confinement. DiCesare has completed her period of confinement as an outpatient and is presently serving her probationary sentence.

DiCesare asserts as the ground for her section 2255 motion that subsequent to her conviction and sentencing a number of cases were decided by the Court of Appeals for the Ninth Circuit, and other courts, holding under factual circumstances similar to hers, that the Reporting Act and its regulations did not impose any duty on persons not financial institutions to file CTR's, nor were financial institutions required to file such reports when the amount of each individual transaction was less than $10,000. Further, persons were

---

1. 31 U.S.C. section 5313(a) states:

(a) When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

2. 31 U.S.C. section 5322 states, in part:

(a) A person willfully violating this subchapter or a regulation prescribed under this subchapter (except section 5315 of this title or a regulation prescribed under section 5315) shall

be fined not more than $250,000, or imprisonment not more than five years, or both.

(b) A person willfully violating this subchapter or ·a regulation prescribed under this subchapter (except section 5315 of this title or a regulation prescribed under section 5315), while violating another law of the United States or as part of a pattern of illegal activity involving transactions of more than $100,000 in a 12–month period, shall be fined not more than $500,000, imprisoned for not more than 5 years, or both.

3. 31 C.F.R. 103.22 provides:

(a) Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000. Such reports shall be made on forms prescribed by the Secretary and all information called for in the forms shall be furnished.

not under obligation to inform financial institutions that they had "structured" their transactions so as to avoid triggering the reporting requirements. DiCesare argues that because these decisions work an intervening change in the law, making the acts for which she was convicted and sentenced legal, the rulings should be given retroactive effect to her case, thus justifying collateral relief under section 2255.

## ANALYSIS

### Federal Custody Requirement

■ Before reaching the merits of DiCesare's motion, it is necessary to determine whether the movant is presently within federal custody so as to qualify for relief under section 2255. *See Heflin v. United States*, 358 U.S. 415, 420, 79 S.Ct. 451, 454, 3 L.Ed.2d 407 (1959); *Azzone v. United States*, 341 F.2d 417, 418 (8th Cir.1965). Although DiCesare is not now, nor was at the time of filing this motion, confined to a jail cell or treatment center, but has been released subject to the terms of a probation order, nevertheless "custody" is not limited to physical confinement. It exists whenever conditions have been imposed which significantly confine and restrain the movant's freedom. *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963); *United States v. Condit*, 621 F.2d 1096, 1098 (10th Cir.1980). For purposes of the habeas corpus statutes, probation constitutes "custody." 621 F.2d at 1098; *Benson v. California*, 328 F.2d 159, 162 (9th Cir.1964). Therefore, as a probationer, DiCesare is considered to be within federal custody and may proceed with her motion to vacate her sentence under section 2255.

### Intervening Case Law

On July 1, 1985, the Court of Appeals for the First Circuit issued its decision in *United States v. Anzalone*, 766 F.2d 676 (1st Cir.1985), wherein the Court reversed the conviction and dismissed the indictment against a defendant under facts similar to those presently at issue.

In *Anzalone*, the defendant on one day purchased three checks from a bank, all of which totaled more than $25,000 but none of which exceeded $10,000 individually. Thereafter, over a two week period the defendant purchased nine additional checks totalling $75,000, again none of which individually exceeded $10,000. The defendant was charged with violation of 18 U.S.C. section 1001 (which proscribes schemes to conceal, or to cause to be concealed, from the government a material act); 18 U.S.C. section 2 (which proscribes aiding, abetting or causing a crime by another); and 31 U.S.C. sections 5313 and 5322 and 31 C.F.R. 103.22, for his failure to inform the bank of the structured nature of transfers which allegedly constituted an illegal scheme to avoid detection of these payments by causing the bank to fail its duty to report them. It was also alleged that, by having caused the bank to fail to file the CTR's, the defendant himself had violated the Reporting Act.

The Court in *Anzalone* noted that the Reporting Act authorizes the Secretary of the Treasury to require domestic financial institutions, and any other participants in transactions for the payment, receipt or transfer of United States currency, to report such transactions to the Secretary in the way the Secretary prescribes. The Secretary has issued Regulations pursuant to authority granted in the Reporting Act, but in 31 C.F.R. 103.22 has required only financial institutions to file CTR's. This Regulation and section 5322(b) of the Reporting Act require that financial institutions report currency transactions in excess of $10,000, and transactions totalling more than $100,000 in a twelve month period. 766 F.2d at 678–679.

The Court in *Anzalone* further noted that to any objective viewer the wording of the Regulation is such that the Secretary was looking only to the financial institution as the source of information required by the Reporting Act. The Court held that the Regulation did not sufficiently put on notice "other participants to the transaction" that they too were required to file a CTR. *Id.* at 676.

As to the Government's proposition in *Anzalone* that a structured transaction by a bank customer constitutes an illegal invasion of any reporting duty of the customer, the Court cited a report to Congress by the Comptroller General of the United States entitled, *Bank Secrecy Act Reporting Requirements Have Not Yet Met Expectations, Suggesting Need for Amendment,* GED–81–80, dated July 23, 1981, which, in discussing the deficiencies of C.F.R. 103.22, stated:

> [A]lthough the regulations required reporting for each single transaction above $10,000, they did not specifically prohibit dividing a large transaction into several smaller transactions to circumvent the reporting requirement. . . .

766 F.2d at 681–682.

Because the Reporting Act and its regulations, as plainly read, imposed no duty on customers to inform financial institutions of the structured nature of their transactions, the *Anzalone* court held that the application of criminal sanctions to persons engaging in the activities charged to the defendant violates the "fair warning requirements of the due process clause of the fifth amendment." Id. at 682.

On January 10, 1986, the Ninth Circuit decided *United States v. Varbel,* 780 F.2d 758 (9th Cir.1986), "a case quite similar" to *Anzalone.* Although recognizing that other courts have held that structured currency transactions under similar facts constitute an illegal evasion of the Reporting Act,[4] the Ninth Circuit adopted the First Circuit's reasoning in *Anzalone* as persuasive and concluded that "the Reporting Act and its regulations did not impose a duty on appellants to inform the banks involved of the nature of their currency transaction." *Varbel* at 762. In reversing the convictions of the defendants, the Ninth Circuit held:

> Even though money laundering furthers the goals of those who may be

engaged in criminal activity, it is not our function to rewrite the law or the implementing currency reporting regulations promulgated by the Secretary. If Congress or the Secretary wish to impose a reporting duty on financial institution customers, they must do so in clear, unambiguous language. We cannot impose the duty by implication.

Id. at 762–63.

In *United States v. Dela Espriella,* 781 F.2d 1432 (9th Cir.1986), the Ninth Circuit followed *Varbel* in reversing the convictions of the kingpin of a money-laundering operation and his "runners" who, to avoid the Reporting Act requirements, purchased cashier's checks for less than $10,000 each. Because the plain language of section 5313 and the regulations make clear that CTR's are required only of financial institutions and only when the currency transaction involves $10,000 or more, the Court in *Dela Espriella* held that, where each currency transaction involves less than $10,000, there can be no conspiracy under 18 U.S.C. section 371 to violate section 5313. *Dela Espriella* at 1435.

■ Under authority of *Varbel* and *Dela Espriella* it is clear here that DiCesare did not violate the Reporting Act by failing to file CTR's for currency transactions that were individually less than $10,000. This result is not changed by the fact that DiCesare may have structured her transactions to avoid detection. Moreover, because DiCesare had no duty to file CTR's for the transactions that she was involved in, she could not be found to have engaged in a conspiracy prohibited by 18 U.S.C. section 371.

*Arguments by the Government in Opposition*

In its opposition, the Government opposes DiCesare's section 2255 motion on two

---

**4.** *See United States v. Cook,* 745 F.2d 1311, 1315 (10th Cir.1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985); *United States v. Puerto,* 730 F.2d 627 (11th Cir.1984), *cert. denied,* 469 U.S. 847, 105 S.Ct. 162, 83 L.Ed.2d 98 (1984), *United States v. Tobon-Builes,* 706 F.2d 1092, 1098 (11th Cir.), *reh. denied,* 716 F.2d 914 (11th Cir.1983); *United States v. Sanchez Vazquez,* 585 F.Supp. 990 (N.D.Ga.1984).

grounds. First, the Government argues that because it has filed a petition for rehearing with suggestion for rehearing *en banc* in *United States v. Dela Espriella,* it would be premature and improper for this Court to vacate the movant's conviction. The Government next argues that because DiCesare pleaded guilty to Count Six of the indictment pursuant to the plea agreement, if the Court vacates DiCesare's conviction and sentence on that count, the Court should also vacate its order dismissing Count One and arraign DiCesare on Count One.

The Government's first argument is moot in light of the Ninth Circuit's denial on September 23, 1986 of the Government's petition for rehearing in *Dela Espriella.* Moreover, in *United States v. Reinis,* 794 F.2d 506 (9th Cir.1986), the Court of Appeals noted that a petition for rehearing was pending in *Dela Espriella,* yet still cited the *Dela Espriella* decision as authority for holding that where even structured currency transactions involved less than $10,000, there could be no 18 U.S.C. section 371 conspiracy to violate the Reporting Act. *Reinis* at 507.

The Government's second argument is likewise without merit. The Government contends that because the plea agreement is contractual in nature, the Court is bound by the well known principle that if one party breaches the agreement, the other party may consider the agreement void. While this may be a generally correct statement of the law, *see United States v. Krasn,* 614 F.2d 1229, 1233 (9th Cir.1980), it is not applicable to the facts of this case. Here there has been no breach of the terms of the plea agreement by DiCesare. She agreed to plea guilty to Count Six of the Indictment on the condition that the Government move the Court to dismiss Count one against her. Unlike the cases cited by the Government in its opposition, DiCesare did not renege on her promise to cooperate in further investigation, *United States v. Brooks,* 670 F.2d 625, 627 (5th Cir.1982), nor did she withdraw her promised guilty plea, *United States v. Wells,* 430 F.2d 225, 230 (9th Cir.1970). Nor by bringing this section 2255 motion is DiCesare refusing to admit the factual basis of her plea. *United States v. Plisek,* 657 F.2d 920, 924 (7th Cir.1981). Instead, it is DiCesare's argument that the facts, even as alleged by the Government in Count Six, do not constitute criminal activity and thus are not punishable.

■ Whether the Government and DiCesare may have shared the belief, prior to the Ninth Circuit's decisions in *United States v. Varbel* and its progeny, that the acts alleged in Count Six were criminal, is now unimportant. What is important under the Government's "contract" theory of the plea agreement is that DiCesare fully performed her obligations. Although change in the law after her guilty plea does relieve DiCesare of the consequences of her performance, it does not make the agreement void. Nor does it permit the Government to reinstate proceedings in violation of its own promised performance under the plea agreement.

*Retroactive Application of Intervening Change in Law*

The Government does not oppose DiCesare's section 2255 motion on the ground that recent Ninth Circuit decisions should not be applied retroactively to her conviction. In fact, the Supreme Court has held that an intervening change in the law is a proper ground for a motion to vacate under section 2255. *See Sanders v. United States,* 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963); *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

CONCLUSION AND ORDER

Based on the foregoing discussion, and the Court having read and considered the files and records in this action, the papers submitted in support of plaintiff's motion, and the Government's opposition thereto, and good cause appearing, the Court determines and orders that plaintiff's motion should be and is hereby GRANTED.