## UNITED STATES of America

### v.

### Samuel GAITHER.

### Criminal No. 1:CR–89–224–001.

United States District Court,
M.D. Pennsylvania.

May 20, 1996.

Ted Smith, Asst. U.S. Atty., Federal Bldg., Harrisburg, PA, for the U.S.

Kurt A. Blake, York, PA, for defendant.

### *MEMORANDUM*

RAMBO, Chief Judge.

Before the court is Defendant's motion to vacate a sentence pursuant to 28 U.S.C. § 2255 and the government's motion to reinstate Count II of the indictment to the captioned criminal case. Briefs have been filed by both parties and the motions are ripe for disposition.

### I. *Background*

Defendant was charged in 1989 in a two count indictment. Count I charged Defendant with use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Count II charged Defendant with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

On April 9, 1990, Defendant entered a guilty plea to Count I of the indictment

---

pursuant to a written plea agreement under which the government agreed to move for the dismissal of Count II. On June 20, 1990, Defendant was sentenced on Count I to a five-year mandatory term of imprisonment to run consecutive to a sentence on related drug charges imposed by the Dauphin County Court of Common Pleas. The court dismissed Count II pursuant to the plea agreement and on motion of the government.

On March 19, 1996, Defendant filed a motion under 28 U.S.C. § 2255 to vacate his conviction, asserting that his conviction for using a firearm during and in relation to a drug trafficking crime could not be sustained under *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The government concedes that the basis for Defendant's guilty plea is insufficient for a conviction in light of *Bailey,* and therefore it does not oppose Defendant's § 2255 motion to vacate his conviction.

On April 10, 1996, the United States moved to reinstate Count II of the indictment. Defendant opposes the motion on the ground that the five-year statute of limitations for prosecuting the crime has expired.[1] The government offers three arguments in response. First, it asserts that Defendant violated the plea agreement when he successfully moved to vacate his conviction and sentence. For this reason, the United States maintains that the statute of limitations was tolled with respect to Count II when it was dismissed pursuant to the plea agreement. (United States' Brief at 2–3.) Second, the government argues that because it has pursued this case with diligence, and engaged in no dilatory conduct, allowing reinstatement is not in conflict with the rationale underlying the statute of limitations. (*Id.* at 3–4.) Finally, the government urges that as a policy matter Defendant must not be permitted to "reap the windfall" of having his conviction under the plea agreement vacated while avoiding charges dismissed pursuant to the same agreement. (*Id.* at 5–6.) The court will address each of these arguments in turn.

## II.  *Discussion*

### A.  Violation Of The Plea Agreement

The government relies heavily upon *United States v. Reguer,* 901 F.Supp. 525 (E.D.N.Y.1995), for all three of its arguments in favor of reinstatement. In *Reguer,* as in the case at bar, after the defendant entered a guilty plea the Supreme Court decriminalized the conduct which was the basis for the plea, and the defendant successfully moved to vacate his conviction. The *Reguer* court was faced with the question whether the government was entitled to reinstate a part of the indictment which was dismissed pursuant to the plea agreement, over five years before the defendant's conviction was vacated. Invoking contract theory, the *Reguer* court set forth the following explanation for its decision that the statute of limitations had been tolled by the defendant's motion to vacate:

> By successfully moving to vacate his plea, Reguer has breached the agreement; in contract terms, he has revoked his acceptance. As part of the agreement, the government promised to dismiss the other pending charges, and in reliance on the agreement these charges were indeed dismissed. The appropriate remedy for the government, then, would be to treat their motion to reinstate the indictment as essentially a motion to vacate the dismissal of the charges dismissed in 1988. Just as Reguer has voided his plea and the consequences therefrom, so should the government be permitted to void their consent to the dismissal of the pending charges. Under this analysis, the May 1988 indictment becomes "pending" just as if it had never been dismissed.

*Id.* at 529 (footnote omitted). The coherence of this analysis, of course, presupposes that by successfully moving to vacate the plea agreement the defendant breached it. This court fails to understand how this could be so.

Here, Defendant's indictment, plea and incarceration are improper under *Bailey.* The United States "confess[es] that the factual

---

1.  18 U.S.C. § 3282 provides: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

basis for Defendant's guilty plea, [while sufficient to sustain the conviction when the plea agreement was executed] ..., is insufficient to sustain defendant's conviction in light of the Supreme Court's recent decision in *United States v. Bailey.*" (United States' Brief at 2.) Under such circumstances, "the federal government has no valid interest in ... [Defendant's] continued punishment...." *United States v. Liguori,* 430 F.2d 842, 849 (2d Cir.1970), *cert. denied,* 402 U.S. 948, 91 S.Ct. 1614, 29 L.Ed.2d 118 (1971) (citing *United States v. Miller,* 406 F.2d 1100, 1104 (4th Cir.1969)). Because Defendant's continued incarceration in the wake of *Bailey* would result in a "complete miscarriage of justice," *Warner v. United States,* 926 F.Supp. 1387, 1391 (E.D.Ark.1996) (internal quotations and citation omitted), his decision to seek release is entirely proper, and is not a breach of the plea agreement.

Assuming the relevance of contract analysis, Defendant's inability to perform his obligations under the plea agreement is more closely parallel to the discharge of performance by a supervening impracticability, Second Restatement of Contracts, § 261, or prevention by government regulation or order, Second Restatement of Torts, § 264. Section 261 states as follows:

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the nonoccurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Section 264 states:

If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made.

Under this reasoning, Defendant's performance is excused and the contract is unenforceable. Of course, if the statute of limitations had not run, equitable considerations would permit the government to reinstate dismissed counts in order to recoup some part of the bargain. However, the court is aware of no basis to conclude that Defendant's excusable non-performance of his obligations under the plea agreement tolls the statute of limitations with regard to Count II.

### B. Rationale Of Statute Of Limitations

Again relying upon *Reguer,* the government's second argument is that because it is not responsible for the delay, allowing reinstatement is consistent with the principles underlying the statute of limitations. The Supreme Court has explained the purpose of the statute of limitations in the criminal context as follows:

The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before the principle that criminal limitations statutes are to be liberally interpreted in favor of repose.

*Toussie v. United States,* 397 U.S. 112, 114–15, 90 S.Ct. 858, 859–60, 25 L.Ed.2d 156 (1970) (internal quotations and citations omitted). The Supreme Court subsequently stated:

[T]he applicable statute of limitations is the primary guarantee against bringing overly stale criminal charges. Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they are made for the repose of society and the protection of those who may during the limitation have lost their means of defence. These statutes provide predictability by specifying a limit beyond which

there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced.

*United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971) (internal quotations, citations, brackets, ellipsis and footnote omitted). Applying this very authority to the instant circumstances, the *Reguer* court stated: "The traditional reasons that support the protections of a statue of limitations are inapposite here. It would be fully consonant with the policies underlying the statute of limitations to consider the statute tolled...." 901 F.Supp. at 527. In support of this conclusion, *Reguer* emphasized that any harm which the defendant might suffer due to the passage of time, such as loss of witnesses, would not be attributable to government delay or misconduct, but instead to the defendant's decision to request that his conviction be vacated. *Id.*

This court disagrees with *Reguer*'s analysis in two important respects. First, the fact that the plea must be vacated under the present circumstances is the responsibility of neither the government *nor Defendant,* but rather has been dictated by the Supreme Court. Second, *Reguer* misconstrues the Supreme Court's statement of the policy underlying the statute of limitations in the criminal context. The overwhelming concern of that policy, according to *Toussie* and *Marion,* is to protect the accused "from having to defend themselves against charges when the basic facts may have become obscured by the passage of time." While the statute of limitations "may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity," diligence and good faith by the government does not toll or otherwise negate the operation of the statute of limitations. Accordingly, notwithstanding the United States' insistence to the contrary, the principles underlying the statute of limitations counsel against allowing reinstatement in this case.

This conclusion is consistent with the two Court of Appeals decisions to address the issue. In *Liguori, supra,* the court reversed the defendant's conviction, obtained pursuant to a guilty plea, on the basis of a change in law announced by the Supreme Court subsequent to the plea. In a concurring opinion, Chief Judge Lumbard stated in dicta that double jeopardy should not bar the reinstatement of charges which were dismissed pursuant to the plea agreement. He explained:

> In such a situation there appears to be every reason to permit the government either to re-indict Liguori on the other counts, or to move in the district court to vacate the dismissal of the other counts. If the government elects to continue with the prosecution of Liguori it must do so promptly, as the acts charged occurred more than four years ago and *the running of the statute of limitations will soon become a bar to any further prosecution.* In the event the government does continue the prosecution, I do not think that the defense of double jeopardy will be a bar.

*Liguori,* 430 F.2d at 851 (Lumbard, C.J., concurring). It is evident that Chief Judge Lumbard assumed that the indictment would have to be reinstated before the expiration of the statute of limitations. Concomitantly, he did not believe that the statute of limitations had been tolled due to either the defendant's motion to vacate or the apparent diligence and good faith with which the government prosecuted the case.

In *United States v. McCarthy,* 445 F.2d 587 (7th Cir.1971), the government sought to reinstate part of an indictment which had been dismissed pursuant to a plea agreement, after the statute of limitations had expired, when the defendant succeeded on appeal in withdrawing his plea. No intervening development in the law precipitated the defendant's desire to withdraw his plea, but, instead, it appears that he simply changed his mind. In support of its decision against reinstatement, *McCarthy* relied exclusively on *Liguori,* as follows:

> We have no doubt that the Government ... had the right to make the recession complete and promptly to reinstate the dismissed counts [when Defendant moved to withdraw his guilty plea]. *See United States v. Liguori,* 430 F.2d 842, 851 (2nd Cir.1970) (Lumbard, C.J., concurring). The question is not so easily answered, however, when the Government postpones

its request for reinstatement for a period of three years and until after the statute of limitations has run.

. . . . .

We agree with the implication in Chief Judge Lumbard's opinion that in a situation of this kind the Government must proceed with diligence, *and that the right to prosecute will be lost unless the record is protected by filing a timely motion to reinstate the dismissed counts.*

445 F.2d at 591–92. Even where the defendant attacked his guilty plea in the absence of a change in the law, then, *McCarthy* concluded that the statue of limitations was not tolled.[2]

It should be noted that the holding of *McCarthy* raises a concern which is not present in this case. To bar the reinstatement of charges dismissed pursuant to a guilty plea, when the plea agreement is vacated due to a defendant's change of heart rather than an intervening change in the law, may invite abuse. This problem was recognized in *United States ex rel. Williams v. McMann,* 436 F.2d 103 (2d Cir.1970), *cert. denied,* 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971), where the government requested reinstatement of an indictment, dismissed pursuant to a plea agreement, when the defendant subsequently withdrew his plea. The *Williams* court permitted reinstatement, *which was requested during the limitations period,* on the ground that to do otherwise would

encourage gamesmanship of the most offensive nature. Defendants would be rewarded for prevailing upon the prosecutor to accept a reduced charge and to recommend a lighter sentence in return for a guilty plea when the defendant *intended,*

at the time he entered the plea, to attack it at some future date.

*Id.* at 107 (emphasis added). The court is in full agreement with this reasoning. However, the unusual scenario here—where an abrupt change in the law renders a guilty plea insufficient to support a conviction—cannot be anticipated by defendants. For that reason, it can play no part in the type of gamesmanship identified in *Williams.*

### C. Policy Against Windfall For Defendants

Finally, as a policy matter, the government urges that Defendant must not be permitted to "reap the windfall" of having his conviction under the plea agreement vacated while avoiding charges dismissed pursuant to the same agreement. While the court is sympathetic to the United States' position, the very existence of a statute of limitations entails the prospect that wrongdoers will benefit. Congress chose to enact a five-year statute of limitations, without a good faith exception, and this court is bound to apply it.

In light of the forgoing, Defendant's motion to vacate the sentence on Count I will be granted and the government's motion to reinstate Count II will be denied.

---

**2.** The United States attempts to distinguish *McCarthy* on the ground that there, in addition to the expiration of the statute of limitations, the court found that the government delayed for three years in requesting reinstatement. While *McCarthy* did cite government delay in support of its decision, this court construes *McCarthy* as viewing the expiration of the statue of limitations as an independently sufficient ground for its decision. Indeed, *McCarthy* specifically stated, without qualification, that Chief Judge Lumbard's concurrence "assumed the indictment would have to be reinstated before the prosecu-

tion was barred by limitations." 445 F.2d at 591 n. 13. Furthermore, the three year delay in *McCarthy* occurred between the defendant's initial appeal of his conviction and the Supreme Court's decision to vacate his guilty plea, which had been previously upheld by the Court of Appeals. The government sought reinstatement promptly after the Supreme Court decision was rendered, and there is no suggestion in *McCarthy* of censurable conduct by the government which might indicate that reinstatement was denied as a sanction.