**UNITED STATES of America, Plaintiff,**

v.

**James Mandell LEWIS, Defendant.**

Criminal No. 94–40044–01–SAC.
Civil No. 97–3007–SAC.

United States District Court,
D. Kansas.

April 29, 1997.

James Mandell Lewis, Rochester, MN, pro se.

Richard L. Hathaway, Office of U.S. Attorney, Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On September 7, 1994, the grand jury returned a ten count sealed indictment, charging the defendant, James Mandell Lewis with two counts of violating 21 U.S.C. § 843(b) (knowing use of a communication facility to cause or facilitate a felony under the Controlled Substances Act), one count of violating 21 U.S.C. § 841(a)(1) (distribution of cocaine base), two counts of violating 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), three counts of violation of 18 U.S.C. § 922(j) (receipt or storage of a stolen firearm), one count of violating 21 U.S.C. § 856(a)(1) (maintaining a place for the purpose of manufacturing, distributing or using a controlled substance), and one count of violating 18 U.S.C. § 924(c)(1) (use of a firearm during and in relation to a drug trafficking crime). On October 19, 1994, the grand jury returned a second superseding indictment which added one additional count of violating 18 U.S.C. § 922(g)(1).

On November 14, 1994, pursuant to a plea agreement, Lewis entered a plea of guilty to count ten of the second superseding indictment, which charged a violation of § 924(c). In exchange, the government agreed "to dismiss the remaining counts of the indictment, and to bring no further criminal charges against the defendant resulting from the activities which form the basis of the indictment in this matter." On January 27, 1995, the court imposed a sentence which included, *inter alia,* a primary term of incarceration of five years.

On September 9, 1996, Lewis filed a *pro se* "Petition for Clarification" (Dk.48). In that motion, Lewis asked the court to enter "an **ORDER** clarifying whether ... or not the dismissed counts in the afore cited case number (USA v. Lewis, 94–40044–01) were dismissed with prejudice or without prejudice."

On September 20, 1996, the court entered a memorandum and order that explained in pertinent part:

" '[T]he common understanding is that in the absence of contrary expression, counts dismissed as a result of plea bargaining are "with prejudice." ' " *Robinson v. Hadden,* 723 F.2d 59, 62 (10th Cir.1983) (quoting *Goldberg v. Warden, Allenwood Federal Prison Camp,* 622 F.2d 60, 65 (3d Cir.), *cert. denied,* 449 U.S. 871 [101 S.Ct. 210, 66 L.Ed.2d 91] (1980)), *cert. denied,* 466 U.S 906 [104 S.Ct. 1684, 80 L.Ed.2d 159] (1984). As the government's response suggests, this general rule is based upon the assumption that the defendant has abided by the terms of the plea bargain, the act which prompted the government to seek dismissal of the other counts in the first instance. The government's response primarily addresses a scenario in which Lewis would in some manner not fulfill his part of the bargain with the government, i.e., withdraw his plea, thereby relieving the government of its corresponding duty under the plea agreement not to prosecute Lewis on the previously dismissed charges and other crimes related to those crimes. Assuming, *arguendo,* that Lewis would successfully withdraw his plea, the government is correct in arguing that it would no longer be bound by the terms of the plea agreement, including the provision requiring dismissal of the remaining counts. The government could then prosecute Lewis on all of the counts in the indictment or other charges arising out of the activities which form the basis of the indictment. *See United States v. Brooks,* No. 95–3367,

1996 WL 508419 (10th Cir. Sept.9, 1996) (on direct appeal record failed to include sufficient factual basis to meet either the "carry" or "use" prong of § 924(c) under *Bailey v. United States* [— U.S. ——], 116 S.Ct. 501 [133 L.Ed.2d 472] (1995)); defendant's guilty plea vacated and case remanded to district court to ("set aside plea agreement unless the defendant chooses to plead anew, reciting facts sufficient under *Bailey* to establish that he 'carried' or 'used' the firearm in connection with a drug trafficking offense."); *Franshaw [Fransaw] v. Lynaugh*, 810 F.2d 518, 524 (5th Cir.1987) ("The cases hold with apparent unanimity that when defendant repudiates the plea bargain, either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy (or other) obstacle to restoring the relationship between the defendant and state as it existed prior to the defunct bargain."), *cert. denied*, 483 U.S. 1008 [107 S.Ct. 3237, 97 L.Ed.2d 742] (1987).

IT IS THEREFORE ORDERED that Lewis' "Petition for Clarification" (Dk.48) is granted to the extent set forth in the body of this memorandum and order.

*United States v. Lewis*, No. 94–40044–01–SAC, 1996 WL 596739, *1–2 (D.Kan. Sept. 20, 1996).

This case comes before the court upon Lewis' *pro se* "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Dk.53). In that motion, Lewis contends that his § 924(c) conviction must be set aside in light of the Supreme Court's decision in *Bailey v. United States*, — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). *See United States v. Wacker*, 72 F.3d 1453 (10th Cir. 1995), *cert. denied*, — U.S. ——, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996). In *Bailey*, the Supreme Court defined the word "use" found in § 924(c)(1) in a manner substantially more narrow than the Tenth Circuit had previously construed the term. In *Bailey*, the Supreme Court held that " 'use' must connote more than mere possession of a firearm by a person who commits a drug offense." — U.S. at ——, 116 S.Ct. at 506. Based upon his contention that he did not "use" the firearms during and in relation to a drug trafficking crime within the meaning of *Bailey*, Lewis contends that the court should set aside his § 924(c) conviction and that he should be set free immediately.

In support of his contention that he should be set free, Lewis cites among other cases *United States v. Gaither*, 926 F.Supp. 50 (M.D.Pa.1996), *United States v. Youngworth*, 1989 WL 129262 (W.D.N.C. Oct.26, 1989), *DiCesara v. United States*, 646 F.Supp. 544 (C.D.Cal.1986). Throughout his brief, Lewis repeatedly indicates that he is not seeking to withdraw his plea. Instead, it is Lewis desire to only set aside the § 924(c) conviction and to not face the remaining charges that were dismissed by the terms of his plea agreement with the government.

. The government responds, conceding that there is insufficient evidence to support Lewis' § 924(c) conviction. However, the government contends that Lewis "cannot request the court to set aside a portion of the plea agreement and expect the remainder to remain intact." As the court suggested in its September 20, 1996, memorandum and order, the government contends that if Lewis successfully challenges his § 924(c) conviction that it would no longer be bound by the terms of the plea agreement. The government's brief also states:

Should defendant continue to pursue the vacation of his conviction, an action which would clearly result in a complete voidance of the plea agreement, the government, as contemplated by this court's September 20, 1996, Memorandum and Order, would be free to resurrect the dismissed charges and institute further criminal proceedings against defendant, consistent with the remaining 10 charges in the Second Superseding Indictment. The choice is clearly defendant's. He can either accept the current plea agreement with its advantages and disadvantages, or he can continue with his attack, with the full knowledge that the government, after it has had an opportunity to review the evidence, may elect to further prosecute the ten outstanding charges.

In closing, the government requests that the defendant be informed of the full consequences of his decision to pursue his attack on his § 924(c) conviction.

In his reply brief, Lewis again argues that his § 924(c) conviction should be set aside and that he should be set free immediately.

### Plea Agreements: General Principles

The court must "construe the plea agreement according to contract principles and what the defendant reasonably understood when he entered his plea." *United States v. Veri*, 108 F.3d 1311, 1313 (10th Cir.1997) (citing *United States v. Hawley*, 93 F.3d 682, 692 (10th Cir.1996)). " 'Plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequence.' " *United States v. Stemm*, 847 F.2d 636, 637 (10th Cir.1988) (*quoting United States v. Reardon*, 787 F.2d 512, 516 (10th Cir.1986) (citation omitted)).

The Supreme Court has stated that the Government may not breach any term of a plea agreement which induced a defendant to plead guilty. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Accordingly, when a defendant has entered into a plea agreement with the Government, the court must ensure that he/she receives what is reasonably due him/her under the agreement. *United States v. Gonzalez–Sanchez*, 825 F.2d 572, 578 (1st Cir.), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). Thus, if a defendant lives up to his/her end of the bargain, the Government is bound by its promises. *Id.* (citing *United States v. Garcia*, 698 F.2d 31, 37 (1st Cir.1983)). However, if a defendant fails to fulfill his/her promises, the Government is released from its obligations under the agreement and may indict and try the defendant regardless of whatever it may have promised earlier. *Id.* (citing *United States v. Baldacchino*, 762 F.2d 170, 179 (1st Cir.1985); *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1, (1987)).

*United States v. Tilley*, 964 F.2d 66, 70 (1st Cir.1992). "A unilateral breach by one party to the agreement may relieve the other party of obligations under the agreement." *U.S. v. Wagner*, 994 F.2d 1467, 1476 (10th Cir.1993).

■ "When construing a plea agreement, we look to what the defendant 'reasonably understood' when entering his plea." *United States v. Easterling*, 921 F.2d 1073, 1079 (10th Cir.1990), *cert denied*, 500 U.S. 937, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991). "When 'a plea [is] predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea.' " 921 F.2d at 1080 (*quoting United States v. Hand*, 913 F.2d 854, 856 (10th Cir. 1990)). Any ambiguities in the plea agreement will be resolved against the drafter. *United States v. Massey*, 997 F.2d 823, 824 (10th Cir.1993).

■ To borrow another contract concept, there exists in all plea agreements a duty of good faith and fair dealing. *United States v. Ailsworth*, 927 F.Supp. 1438, 1445 (D.Kan. 1996). *See United States v. Rexach*, 896 F.2d 710, 714 (2nd Cir.) ("There is, as [the defendant] argues, an implied obligation of good faith and fair dealing in every contract."), *cert. denied* 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990).

### Analysis

Although some courts considering issues similar to the one raised by Lewis have held that the invalid conviction should be vacated without withdrawing the plea and that the defendant should immediately be set free without fear that the government might prosecute the defendant on the counts dismissed pursuant to the plea agreement, it appears that a majority of courts have concluded that it is more appropriate to permit the defendant to withdraw his entire plea if he so chooses, knowing that the government may choose to prosecute the defendant on the counts that were dismissed pursuant to plea agreement. The majority approach to which this court ascribes appears to be more firmly grounded in contract and equitable principles. This approach is also consistent with non-binding Tenth Circuit precedent, *see Brooks*, 1996 WL 508419 at *3, as well as the Tenth Circuit's delineation of the district court's authority in a § 2255 proceeding. *Cf.*

*United States v. Moore,* 83 F.3d 1231 (10th Cir.1996).

Some courts in the majority have characterized the defendant's postconviction challenge as a breach of the plea agreement, *see United States v. Viera,* 931 F.Supp. 1224, 1228 (M.D.Pa.1996) ("Thus, the defendant's successful postconviction challenge is a breach of the plea agreement."), while other courts have described the defendant's postconviction attack as a request to rescind the plea agreement based upon the doctrine of mutual mistake. The different nomenclature used to describe the defendant's challenge may stem in part from the specific facts of each case or simply from the fact that although contract principles are useful in analyzing plea agreements, plea agreements are unique because they are ultimately governed by Constitutional principles not implicated by ordinary civil contracts.[1] Therefore, the parallel between plea agreements and ordinary contracts is not always perfect. Ultimately, the distinction is academic, as the end result is that the defendant is able to set aside the invalid conviction, but at the price of losing any other benefits of the plea agreement including the possibility of facing any charges dismissed pursuant to the plea agreement.

One of the most thorough discussions of this issue is found in *United States v. Barron,* 940 F.Supp. 1489, 1492–1494 (D.Alaska 1996). In *Barron,* pursuant to a plea agreement, the defendant entered a guilty plea to one count of felon in possession of a firearm, one count of possession of cocaine with the intent to distribute and one count of using or carrying a firearm during and in relation to a drug trafficking offense. No counts of the indictment were dismissed. Barron was sentenced to 120 months on the first two counts and to 60 months on the § 924(c) count.

After the Supreme Court's decision in *Bailey,* Barron filed a § 2255 motion. Both parties agreed that the facts upon which the plea agreement rested do not state a § 924(c) offense in light of *Bailey.* Both parties also agreed that Barron's plea for violation of

§ 924(c) should be vacated. The parties disputed, however,

> as to 1) whether Barron's entire plea and the underlying agreement should be vacated and the parties restored to the *status quo ante, i.e.,* whether the government can prosecute Barron under the original indictment; or 2) whether the § 924(c) conviction should be set aside and its sentence deducted from Barron's composite sentence with the remaining sentence left intact.

940 F.Supp. at 1491.

Barron argued that the § 924(c) count should be viewed in isolation from the remainder of the sentence. Barron argued that the § 924(c) conviction should be vacated, and leaving the remainder of his sentence and convictions intact. The government contended that the proper remedy was to allow Barron to plead anew and that if Barron decided not to plead anew, the government would then be free to proceed on the original charges.

In pertinent part, the district court's order states:

> In *Dickson,* this Court faced a similar issue and concluded that the plea was only infirm on the theory that the parties, in negotiating it, operated under a mutual mistake of law. *United States v. Dickson,* Case No. A92–0081 CR (JKS) at Docket No. 613. As a result, the defendant, whose plea was in part arguably the product of ignorance, should have the option of withdrawing his plea and pleading anew. He should not be compelled to withdraw his plea if he is content with the total sentence he initially received including the defective § 924(c) increment. Trial on dismissed counts is not affected by the double jeopardy clause of the Fifth Amendment to the United States Constitution. *See United States v. Vaughan,* 715 F.2d 1373 (9th Cir.1983). Withdrawal of the plea only restores the parties to the *status quo ante. See, e.g., United States v. Wells,* 430 F.2d 225 (9th Cir.1970). Therefore, upon withdrawal of his plea pursuant to *Bailey,* a

---

1. "Plea agreements are *like* contracts; however, they are not contracts, and therefore contract doctrines do not always apply to them." *United*   *States v. Olesen,* 920 F.2d 538, 541 (8th Cir.1990) (citing *United States v. Zweber,* 913 F.2d 705, 711 (9th Cir.1990)).

defendant is essentially conceding that the plea is void and that both parties should be returned to the position they were in before a plea was entered, *i.e.,* before jeopardy attached. Because the plea agreement would then be void due to the mutual mistake of the law at the time the plea was entered, the government would have the opportunity to reinstate the original charges. *See, e.g., United States v. Pollard,* 72 F.3d 66, 67–69 (7th Cir.1995); *United States v. Valle,* 72 F.3d 210, 217–18 (1st Cir.1995).

Because Barron did not go to trial, the *Bailey* analysis, while piquant, is not material to Barron's quest to prevent the government from reinstating the original charges against him. This conclusion follows from the fact that this Court does not know for certain what the government would have proved had the case gone to trial. It is impossible to determine what a jury would have found had Barron refused to plead and forced the government to prove its case. It is equally impossible to predict what sentence Barron would have received had the government tried Barron on all charges upon which they could persuade a Grand Jury to indict.

Barron is not pleased with this analysis. He would prefer a windfall. *Cf. United States v. Escamilla,* 975 F.2d 568, 571 (9th Cir.1992) (where one party is permitted to revoke the plea agreement, it may not nevertheless retain the benefits of the plea agreement as "unjust enrichment"). In support of this result, he cites: *DiCesare v. United States,* 646 F.Supp. 544 (C.D.Calif. [Cal.] 1986); and *United States v. Huffman,* No. CR–88–0234 (N.D.Calif. [Cal.] 1996) (unreported).[6] The courts in each of these cases reason that when a defendant pleads to a non-existent crime in return for sentencing concessions, he has fully performed his obligations under the agreement. Further, these courts reason that if the sentence is later set aside, he cannot be tried anew for the crimes that were initially compromised because he did not breach the plea agreement; the agreement was set aside for reasons beyond his control. This reasoning is flawed in a number of particulars. First, setting aside his plea and the resulting conviction is not beyond Barron's control because he must first affirmatively seek to have the conviction and sentence set aside. He has done so pursuant to 28 U.S.C. § 2255.

---

FN6. With all due respect, it appears that these courts have not thought through the issue in light of the realities of plea bargaining. An illustration will illumine the problem. Assume that the authorities arrest Jack the Ripper, charge him with the torturous murder of 175 women, and a Grand Jury subsequently issues an indictment. Facing 175 convictions and consequent death penalties, Ripper, on advice of counsel, pleads to one count—the murder of Sally Jones—in return for a guaranteed life sentence and a promise by the prosecutor to dismiss all other charges. Ripper killed so many women he cannot be sure if he really killed Sally; his victims kind of blend together in his mind. However, she died under circumstances virtually identical to his other victims, and he was in the neighborhood at the time of her murder. Therefore, he cheerfully concedes guilt, the prosecutor dismisses the other charges, and Ripper receives the bargained for sentence. Years later, it transpires that a copy-cat actually killed Sally and that Ripper is unquestionably innocent for Sally's murder. Ripper moves for post-conviction relief. In the words of the Supreme Court, he is factually innocent and no one can contest his innocence. *See, e.g., Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986). The gravamen of Ripper's claim is that there was a mutual mistake of fact. The proper result would be to set aside the plea and reinstate the original charges so that a new agreement can be reached on the basis of the murder of a victim that Ripper actually did kill.

Second, and more to the point, the basis for the bargain between the government and Barron was not Barron appearing in court on a particular day and engaging in a ritualistic dialogue. See Fed.R.Crim.P. 11. Instead, the basis for the bargain was an agreement regarding the charges to which Barron would plead and the amount of time Barron would be required to serve. In the instant case, the sentence for violation of § 924(c) was a mandatory consecutive sentence of five years. It is only by serving that consecutive five-year sentence that Barron could be deemed to have fully performed his obligations under that part of the plea agreement. By attacking a key component in the sentencing plan envisioned by the plea agreement, Barron is, in effect, attacking the plea agreement itself.

*See United States v. Pimienta–Redondo,* 874 F.2d 9 (1st Cir.) (rejecting due process and double jeopardy challenges to resentencing on Count II after remand where sentence on Count I was vacated on appeal and eventual sentence for Count II was equal to former sentence for both Count I and Count II), *cert. denied,* 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989); *accord United States v. Bay,* 820 F.2d 1511, 1513–14 (9th Cir.1987) (recognizing that sentence imposed for multiple counts is a composite which must be revisited as a totality if one or more but less than all components are eliminated on appeal).

The confusion in the cases cited by Barron may be traceable to the fact that where two parties rescind a contract, each is entitled to restitution of any benefit he bestowed on the other party. *See United States v. Asset,* 990 F.2d 208, 215 (5th Cir.1993) (discussing "restitution" in the context of a plea agreement where performance on one side of the agreement is impossible). In this situation, the benefit Barron bestowed is the time he served and will serve. He is entitled to restitution for that amount. He will receive it in the form of credit for time served against any sentence he should ultimately receive. The benefit the government bestowed was the promise not to seek further prosecution arising from facts underlying the indictment and not to seek the enhanced, higher sentence, *i.e.,* 18 U.S.C. § 924(e), which provides a fifteen-year minimum. Because Barron is entitled to be relieved of a major part of the burden of his plea, common sense and justice suggests that he lose the benefits as well.

In sum, fundamental fairness dictates the proper result in this case. Barron's motion for § 2255 relief should be conditioned on his timely withdrawal of his plea. Failure to withdraw his plea will be deemed a knowing and intelligent forfeiture of the right to ever raise the issue again. *See United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). Nothing in this order should prevent the parties from negotiating a new agreement if they wish to do so, correctly addressing the known facts in the light of the existing law.

**IT IS THEREFORE ORDERED:**

William Scott Barron's motion for post-conviction relief at **Docket No. 76** is **DENIED in part and GRANTED in part.** Treated as a motion to vacate only the § 924(c) conviction, the motion is denied. Treated, however, as a motion to withdraw his plea, the motion is **GRANTED ON CONDITION** that Barron give notice of his intent to withdraw his plea in writing served and filed on or before Monday, September 16, 1996. Should Barron decline to withdraw his plea, the condition will fail and the Court will treat the original plea, conviction, and sentence as reaffirmed. A reaffirmation will be treated as a knowing, intelligent, and voluntary relinquishment of the right to ever complain that Barron's conviction was in violation of *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

940 F.Supp. at 1492–1494 (footnote omitted).

After that order was entered, Barron moved for reconsideration, which was denied. In relevant pertinent part, the district court stated:

Barron seeks reconsideration, repeating arguments previously made and rejected. Docket No. 90. Essentially, Barron argues that he abided by his plea agreement and that the *Bailey* decision effectively made it impossible for him to perform by serving the § 924(c) sentence. Barron cites *Rodriguez v. United States,* 933 F.Supp. 279 (S.D.N.Y. June 27 [26], 1996); *United States v. Gaither,* 926 F.Supp. 50 (M.D.Pa.1996); and *DiCesare v. United States,* 646 F.Supp. 544 (C.D.Cal.1986). The rationale of these cases is addressed and rejected in the Court's earlier *Barron* opinion. *Barron,* Case No. A91–0115 CR (JKS) (D.Alaska August 13, 1996). This Court reasoned that a guilty plea waives, or more accurately forfeits, any right to bring a post-conviction relief petition except one challenging the voluntariness of the plea. *See United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989). Included in the issues waived is the claim that intervening or

supervening authority would, if anticipated, have led to a more favorable plea agreement. *See United States v. Johnson,* 67 F.3d 200, 202–203 (9th Cir.1995); *also see United States v. Abarca,* 985 F.2d 1012 (9th Cir.1993) (finding that waiver of right to appeal precluded defendant from seeking reduced sentence on grounds of newly discovered partially exculpatory evidence that undermined the factual basis for the original sentencing decisions). While *Johnson* and *Abarca* deal with express waivers of the right to appeal, there is no reason not to apply their holdings to the implicit waiver, or forfeiture, of the right to bring a post-conviction relief proceeding recognized in *Broce.* The Court would therefore have rejected *Barron's* § 2255 petition but for the Court's conclusion that *Bailey* undermined the prior finding of voluntariness. The Court was, and is, prepared to give Barron relief, but solely on the basis that his prior plea was involuntary. The proper relief is to withdraw his plea and return the parties to the *status quo ante. See United States v. Wells,* 430 F.2d 225, 230 (9th Cir.1970). The choice is Barron's; he can reaffirm his plea agreement with all of its detriments and benefits or he can repudiate it. He cannot, however, have his cake and eat it too.

940 F.Supp. at 1494–1495.

The court notes that the Ninth Circuit has recently favorably cited the procedure followed by the court in *Barron.* In *United States v. McJoy,* 97 F.3d 1462 (9th Cir.1996) (Table; available on Westlaw at 1996 WL 528422), the defendant argued that his guilty plea to a § 924(c) violation was invalid because he did not "use" a firearm within the meaning of *Bailey,* nor did he carry one. The Ninth Circuit agreed, finding that "[t]he facts to which McJoy pleaded guilty constituted neither 'using' or 'carrying' a firearm."

In pertinent part, the Ninth Circuit stated:

In light of the insufficiency of the factual basis for the plea to 18 U.S.C. § 924(c)(1) in the plea agreement, and the fundamental unfairness of allowing the government to keep the benefit of a bargain McJoy did not contemplate, we conclude that the plea

agreement is invalid in its entirety. Consequently, the guilty plea is also invalid. *See United States v. Cordova–Perez,* 65 F.3d 1552, 1556 (9th Cir.1995) ("The viability of the plea agreement controls the viability of the plea."), *petition for cert. filed,* (U.S. May 22, 1996) (No. 95–9101).

In the context of a government breach of a plea agreement, we have held that the district court generally has the discretion to fashion appropriate relief. *See United States v. Anderson,* 970 F.2d 602, 608 (9th Cir.1992), amended, 990 F.2d 1163 (9th Cir.1993). Although no breach occurred here, the plea agreement and plea are invalid, and the district court should return the parties to the status quo ante by permitting McJoy to plead anew or proceed to trial on the original charges. *See id.; see also United States v. Barron,* 940 F.Supp. 1489 (D.Alaska 1996) (remedy for revocation of plea agreement is withdrawal of entire plea or reinstatement of original charges).

1996 WL 528422 at *2.

As mentioned above, other courts have taken positions similar to the one urged by Lewis. For example, the movant in *Gaither* sought to vacate his § 924(c) conviction in light of the Supreme Court's decision in *Bailey.* In *Gaither* the district court concluded that the defendant's "inability to perform his obligations under the plea agreement is more closely parallel to the discharge or performance by a supervening impracticability, Second Restatement of Contracts, § 261, or prevention by government regulation or order, Restatement of Torts, § 264." *Gaither,* 926 F.Supp. at 52. Facially, this analysis seemingly supports the position urged by Lewis. However, *Gaither* goes on to suggest that upon vacation of his plea, the government would be free to prosecute him on the counts dismissed pursuant to the plea agreement: [2]

Under this reasoning, Defendant's performance is excused and the contract is unenforceable. *Of course, if the statute of limitations had not run, equitable considerations would permit the government to*

---

2. Unlike *Gaither,* no statute of limitations problems or issues are implicated in the case at bar.

*reinstate dismissed counts in order to re-coup some part of the bargain.* However, the court is aware of no basis to conclude that Defendant's excusable non-performance of his obligations under the plea agreement tolls the statute of limitations with regard to Count II.

926 F.Supp. at 52 (emphasis added). Even if the district court's analysis in *Gaither* regarding § 261 of the Restatement of Contracts is correct, Lewis would ultimately be denied the relief he seeks in this case.

■ In the final analysis, this court basically agrees with the reasoning set forth in *Barron.* Under contract parlance, the parties negotiated and entered a plea agreement based upon a mutual mistake. Section 151 of the *Restatement (Second) of Contracts* (1981) defines a "mistake" as "a belief that is not in accord with the facts." Comment b. provides:

> *Facts include law.* The rules stated in this Chapter do not draw the distinction that is sometimes made between "fact" and "law." They treat the law in existence at the time of the making of the contract as part of the total state of facts at that time. A party's erroneous belief with respect to the law, as found in statute, regulation, judicial decision, or elsewhere, or with respect to the legal consequences of his acts, may, therefore, come within these rules.

Section 152 of the *Restatement (Second) of Contracts* (1981) provides:

**When Mistake of Both Parties Makes a Contract Voidable**

(1) Where a mistake of both parties at the time of contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

(2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

The court believes that the underlying problem with the plea agreement in this case is more closely akin to a mutual mistake than any other contract principle. Based upon the mutual mistake of the parties which goes to the core of their agreement, Lewis may seek to rescind his plea agreement with the government.

The court believes that this result is just and comports with principles of fundamental fairness. As mentioned above, all plea agreements embrace a duty of good faith and fair dealing. These duties apply to both parties. When Lewis entered his agreement with the government, he clearly understood that as a virtual certainty his plea would result in a mandatory minimum primary term of incarceration of five years. In exchange, Lewis received the benefit of avoiding exposure to a substantially longer term of imprisonment. At its core, that was the basis of the parties' bargain. By voluntarily rescinding that agreement, Lewis exposes himself to the additional punishment he avoided by entering his plea in the first instance. In short, the court does not believe that Lewis is entitled to what amounts to a windfall on the basis of the parties' mutual mistake.

**Summary**

Lewis is the party adversely affected by the parties' mutual mistake. His plea agreement with the government is therefore voidable if he so chooses. Under contract, equitable and constitutional principles, Lewis may seek to withdraw his plea. Lewis is not, however, entitled to vacation of his conviction without fear of prosecution on the counts dismissed pursuant to the plea agreement.

**Need for Counsel**

During the time that he entered his plea and was sentenced, Lewis was represented by retained counsel, Wendell Betts. In this proceeding, Lewis appears *pro se.* Although withdrawing his plea may appear attractive to Lewis, in light of the possibility that withdrawal of his plea may expose him to a substantially longer period of incarceration than he currently faces, the court believes that an attorney admitted to practice before this court should advise Lewis of his current options before acting. Not knowing if Mr. Betts still represents the defendant, the court orders the following:

Within ten days of the date this order is filed, Lewis shall file a document indicating

**1522**

whether or not Betts or another attorney admitted to practice before this court currently represents him. If Lewis is represented by an attorney, the court will contact counsel for each side and then proceed accordingly. If Lewis is not currently represented by counsel, and if Lewis believes that he is without sufficient funds to retain an attorney and that he desires the court to appoint one, Lewis shall file a pleading which indicates that he is without sufficient funds to retain an attorney and would like the court to appoint one. If Lewis wishes to proceed *pro se* he shall so state in writing.[3] Upon receipt of that pleading, the court will then act.

IT IS THEREFORE ORDERED that Lewis' "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Dk.53) is denied in part and taken under advisement in part. Treated as a motion to vacate only the § 924(c) conviction, the motion is denied. The portion of his motion treated as a motion to withdraw his plea is taken under advisement.

IT IS FURTHER ORDERED that within ten days of the date this order is filed, Lewis shall file a document indicating whether or not Betts or another attorney admitted to practice before this court currently represents him. If Lewis is represented by an attorney, the court will contact counsel for each side and then proceed accordingly. If Lewis is not currently represented by counsel, and if Lewis believes that he is without sufficient funds to retain an attorney and that he desires the court to appoint one, Lewis shall file a pleading which indicates that he is without sufficient funds to retain an attorney and would like the court to appoint one. If Lewis wishes to proceed *pro se* he shall so state in writing. Upon receipt of that pleading, the court will then act.

---

**3.** The court strongly encourages Lewis to seek the advice of counsel in evaluating his current options. Although Lewis may choose to represent himself, such a course is fraught with unforeseen peril. Albeit in a civil context, the Supreme Court has made this comment on the dangers of self-representation: "The adage that 'a lawyer who represents himself has a fool for a client' is the product of years of experience by seasoned litigators." *Kay v. Ehrler,* 499 U.S. 432–438, 437, 111 S.Ct. 1435, 1438, 113 L.Ed.2d 486 (1991).